## In re RICH (two cases).
### No. 139.

Circuit Court of Appeals, Second Circuit.

April 14, 1943.

Joseph Nemerov, of New York City (George Gussaroff and Aaron Schwartz, both of New York City, of counsel), for bankrupt-appellant.

Eula Marlene Rich, objecting creditor-appellee in person.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The bankrupt filed his voluntary petition in the District Court for the Southern District of New York on March 29, 1940, and was adjudicated on the same day. Among those who filed claims in the bankruptcy proceedings was his wife, the appellee, who is living apart from him under a decree of separation granted in the courts of the state of New York. In due course his application for discharge was made and heard before a referee. At that time his wife filed several specifications of objection of which only two now require notice. One of these charged that the bankrupt had falsely testified under oath in the bankruptcy proceedings and another that, with intent to conceal his financial condition, he had failed to keep records and books of account from which such condition might be ascertained.

After hearing, the referee decided that neither specification had been sustained and granted the discharge. Upon review of the referee's order by the district judge there was a reversal as to the two specifications above mentioned and an order was entered denying a discharge. It is from this order that the bankrupt has appealed.

That the District Court had the power to reverse the decision of the referee on the evidence cannot be doubted. In re Kearney, 2 Cir., 116 F.2d 899; In re Michel, 2 Cir., 56 F.2d 15. Whether the power is properly exercised in any particular case depends of course upon the circumstances and that requires attention to the facts as shown by the record on this appeal. Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975.

It was shown that the bankrupt is the leader of an orchestra who for some considerable time before the petition in bankruptcy was filed, had been broadcasting with his orchestra under contracts which gave him the following gross income. Under one of these contracts dated February 20, 1939, he was paid $1050 a week for five weeks; under another dated April 13, 1939, he was paid $1250 a week for seven weeks; under another dated August 31, 1939, he was paid $1000 a week for seventeen weeks. During the period from January 1, 1940, to March 25, in the same year and but four days before the petition in bankruptcy was filed the bankrupt broadcast with his orchestra once each week for thirteen weeks for which he was paid $1000 the first week and $1200 each week thereafter. The increase to $1200 a week became effective on January 8, 1940, and all payments due him were made to his personal manager, a man by the name of Wilson. Out of his gross income above set forth the bankrupt had to pay the expenses of

his orchestra, including the salaries of its members, who averaged from sixteen to nineteen persons during the period.

It was shown that the bankrupt's gross income from January 24, 1939, to March 25, 1940, had been $48,110. That during this time he had kept no books of account and no records except some check stubs which however failed in large part to show what had become of such of his money as he deposited in his checking account.

He succeeded in explaining to the satisfaction of the referee his failure to keep records which did disclose his financial status by showing that his manager Wilson, and managers he had had before Wilson, kept books of account showing what payments had been made by them to him and what they had done with other money belonging to him which had come into their possession. This explanation was not accepted by the district judge and we think the latter had ample reason for declining to accept it. The statute provides that where an objecting-creditor shows reasonable cause to believe that a bankrupt has violated a provision of the act which will bar his discharge the burden is upon the bankrupt to explain. Here there was no explanation showing what had become of sizable sums which the bankrupt received. It appeared that while Wilson was receiving what was due the bankrupt for broadcasting, he was turning over $250 a week to the bankrupt under what was called a guarantee of that amount. It may be that a man who with his orchestra did a business which brought him a gross income of something like $50,000 a year could safely rely on the books of someone else in doing his business. But when he is found seeking a discharge in bankruptcy and he faces the handicap of being without books or records to show his financial status his only remedy is one of explanation. He apparently resented being called upon to explain what he did with his money and this attitude may have been a contributing factor in his failure to justify his lack of financial records and books of account. However that may be, his failure too clearly appears from this record for us to have any fair doubt that the district judge had ample ground upon which to base his decision contrary to that of the referee. We have the same question to determine here. Morris Plan Industrial Bank v. Henderson, supra. And we have reached the same result.

As this specification was properly sustained and that is enough to require an affirmance of the order we find it unnecessary to determine whether there was enough to sustain the additional ground relied on below for the denial of the discharge.

Order affirmed.