298

## WILLIAMSON v. WILLIAMS.
### No. 5078.

Circuit Court of Appeals, Fourth Circuit.
July 29, 1943.

George E. Allen, of Richmond, Va., for appellant.

Charles W. Crowder, of Richmond, Va., for appellee.

Before DOBIE and NORTHCOTT, Circuit Judges, and MOORE, District Judge.

MOORE, District Judge.

James Kader Williamson having been adjudicated a bankrupt on February 6, 1940, the referee fixed May 20, 1940, as the limit of time for filing objections to the bankrupt's discharge, and due notice thereof was given. Appellee filed specifications of objections. Those which were sustained by the referee and the Court alleged that the bankrupt had committed an offense punishable by imprisonment under the Bankruptcy Act, and had made a false oath in relation to the bankruptcy proceedings, in that he had purchased a new Ford automobile on October 7, 1939, titled it in the name of his unemployed minor daughter, Hester Vernelle Williamson, and omitted it from his schedule; and had failed to list or account for certain monies amounting to $100.33, which came into his hands a day or two before filing the petition in bankruptcy.

The referee found that the Ford automobile was bought by the bankrupt, and not by his brother, R. L. Williamson, as was contended by the bankrupt, and further found that the bankrupt had made a false oath to his pauper's affidavit, in that he had the $100.33 in his possession at the time he executed such affidavit. The district court sustained the referee's findings and denied the bankrupt a discharge. The bankrupt thereupon appealed to this court.

The applicable section of the Bankruptcy Act (Title 11 U.S.C.A. § 32) provides in part as follows: "c. The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under this title; or * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has com-

mitted any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The evidence in the case consists of the testimony of four witnesses, namely, the bankrupt, R. L. Williamson and P. P. Williamson, brothers of the bankrupt, and Hester Vernelle Williamson, daughter of the bankrupt, all of whom were called as adverse witnesses by appellee. The bankrupt and his daughter both testified that the Ford automobile had been purchased for her by R. L. Williamson; that he had made the cash payment, and that he had made all subsequent payments up to the time the testimony was given. R. L. Williamson did not mention the purchase of the Ford automobile. P. P. Williamson testified entirely about other matters.

■■ It is contended by appellant that this testimony conclusively establishes that the automobile was purchased by R. L. Williamson and not by the bankrupt. In making this contention, appellant loses sight of the fact that inferences arising from admitted circumstances may sometimes be strong enough to outweigh the most positive and direct oral statements. Moreover, as provided in the above quoted section of the Bankruptcy Act, after a showing of reasonable grounds for believing that an offense has been committed, the bankrupt must sustain the burden of proving that he has not done the acts charged. His denial, together with that of the recipient of the allegedly concealed property, is not sufficient to sustain this burden where, as here, all the circumstances point to the truth of the allegations.

In brief, the circumstances shown by the evidence were as follows: R. L. Williamson had himself gone into bankruptcy in the year 1935. He had been a railroad fireman for seventeen years with no regular place of residence until his marriage in January, 1938; had never saved any money, and was unemployed from July until November in the year 1939. At the time the Ford automobile was purchased and titled in the name of Hester Vernelle Williamson, R. L. Williamson had been married approximately twenty-one months. He had no automobile of his own at the time, but shortly before the testimony was taken in April, 1940, he bought an old Hupmobile for $18. The new Ford was used both by the bankrupt and his daughter (but never by R. L. Williamson), sometimes together and sometimes the bankrupt used it alone. He used it alone in driving to the place of taking depositions on April 26, 1940. That the relationship between Hester Vernelle Williamson and her uncle, R. L. Williamson, was hardly close enough to render plausible the gift of an automobile by him to her is further shown by her testimony that she did not know exactly where he lived, and that he was single, whereas, he had actually been married for nearly two years.

We agree with the statement of the referee in his report to the district court that in view of these circumstances, it would tax credulity beyond reason to believe that the Ford automobile was given to the bankrupt's daughter by her uncle, R. L. Williamson.

One of the specifications in objection to the bankrupt's discharge related to a transaction between the bankrupt and his brother, R. L. Williamson, whereby the bankrupt was alleged to have fraudulently transferred $900 to R. L. Williamson in the month of July, 1939. Although the referee found that this allegation had not been sustained, much of R. L. Williamson's testimony had to do with the alleged payment of $900. When asked what he did with it, he said, "I don't have to tell everybody what I do with my money," and when required by the referee to answer, he said, "I spent it accordingly. Different things I needed to pay," and, "I couldn't account for it. I spent it according to what I needed to spend it for." Again, "I spent it as I needed to spend it for what I owed people for and to live on." He was not asked whether he did or did not pay for the Ford automobile with this money, but we are of opinion that his answers as given contained an implicit denial that he had used any of the $900 for that purpose. Not having any other savings, and being unemployed at the time, it may be fairly inferred from the testimony as a whole that R. L. Williamson did not purchase the Ford car.

The testimony reveals a situation studded throughout with badges of fraud. The referee could hardly have reached a different conclusion from that embodied in his report as approved by the district court.

■■ A discharge in bankruptcy is a privilege which a bankrupt is not entitled to unless he deserves it. Dixwell v. Scott & Co., 1 Cir., 115 F.2d 873. The question

is one addressed to the sound discretion of the district court. The exercise of such discretion will not be interfered with by us unless grossly abused. See Hultman v. Tevis, 9 Cir., 82 F.2d 940. The report of a· referee adopted by a district court will not be set aside on appeal in the absence of clear mistake. Bagley v. Rowley, 6 Cir., 127 F.2d 139; Fish v. East, 10 Cir., 114 F.2d 177; In re Newman, 6 Cir., 94 F.2d 108; Gulbransen Co. v. Couch, 5 Cir., 61 F.2d 932; In re Oriel, 2 Cir., 23 F.2d 409.

As to the finding by the district court that the bankrupt made a false oath in connection with the pauper's affidavit filed by him, it is urged that since no specific objection was filed on that ground, none can be considered here. We are of opinion that the specifications were sufficiently broad to support such a finding, and that the circumstantial evidence, namely, that the bankrupt had in his possession $100.33 on the Saturday preceding the Monday on which he filed his petition and was unable to accouut for the disposition of any substantial part of that sum, amply justified the referee and the court in concluding that he was guilty of making a false oath.

For the reasons given, the judgment of the district court is affirmed.