**GREENFIELD STATE BANK, Appellant,**

v.

**Franklin Kyle COPELAND, Appellee.**

**No. 19026.**

United States Court of Appeals
Ninth Circuit.

April 17, 1964.

Leonard C. Hall, Jr., Bakersfield, Cal., for appellant.

Robert L. Williams, Bakersfield, Cal., for appellee.

Before BARNES, MERRILL and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from an order of the United States District Court affirming the order of a referee in bankruptcy which overruled appellant's objections to the discharge of the bankrupt, Franklin Kyle Copeland.

Jurisdiction existed below (§§ 2, sub. a(10) and 2, sub. a(12), Bankruptcy Act

of 1938, Title 11 United States Code, §§ 11, sub. a(10) and 11, sub. a(12)) and here (§ 24, Bankruptcy Act of 1938, Title 11 United States Code, § 47).

The basis of appellant's objections to the bankrupt's discharge was the alleged fact the bankrupt had obtained a loan from appellant amounting to $3,000 by filing a false and fraudulent financial statement.

There is no question but that the bank loaned Copeland $3,000. In connection with such loan, it is undisputed Copeland furnished his financial statement to the bank, dated January 4, 1962. The factual dispute is when each of these acts were accomplished. The referee found this statement was in fact false, but also found the bank could not have relied on the false statement in making the loan. The district court ruled there was substantial evidence to support the finding of the referee, and affirmed the order.

Appellant bank urges there was "a total failure of any substantial evidence" to support this finding; that the fact of non-reliance "is contradicted by *almost* every single bit of evidence in this case." (Emphasis added.)

The referee, of course, filed his certificate and report when the district judge was called upon to review the referee's order overruling the bank's objections to discharge. His summary of the evidence is before us (Clk's Tr. pp. 16–21). This indicates (1) the bankrupt testified the January 4th, 1962 statement was not filled out for the purpose of obtaining the $3,000 loan; that he believed he received the loan before he gave the statement; that he did not know how much he then owed; that part of the figures shown on the statement were in his handwriting (those on the left); that the figures on the right were not; (2) William M. Doody, the manager of the bank, testified that the totals on the right hand side of the statement were his (Doody's) handwriting; that the bankrupt had borrowed money from the bank before; that he agreed to loan the bankrupt $3,000 in January; that the bankrupt brought back the financial statement two or three days later; that the bankrupt said he did not know how much he owed; that he (Doody) did not know if the bankrupt got the money before the statement was brought back; that on January 5th, 1962, he made a written entry that he had made a $3,000 loan to the bankrupt; that he had a memo dated January 5th showing the loan had been granted on or before January 5th, 1962, which was before the bankrupt brought back the financial statement. (Clk's Tr. p. 20.)

The referee added at the end of his report:

"It is to be noted that the loan was made before the financial statement was delivered to the bank and therefore there could not possibly have been any reliance thereon."

At the hearing before the district court, the appellant made a motion to take further testimony under General Order 47. This was granted, and Doody was again called upon to testify. His testimony was necessary, urged appellant, because there was no transcript available showing his testimony given before the referee (Rep'rs Tr. p. 4), and his testimony was required to show the erroneous conclusion of the referee, both under the facts and the law. The district court then reopened the case, and placed Doody on the stand. Appellant's counsel then went "through his entire testimony again." (Rep'rs Tr. p. 8.) His was the only testimony offered.

Mr. Doody testified on direct examination before the district court that the subject of the loan came up "on or before" January 4th, 1962; that the blank financial statement was given to the bankrupt; that the statement was filled in and submitted "for the purpose of obtaining this $3,000 loan" (Rep'rs Tr. p. 9); that it was the policy of the bank to require a financial statement; that there was no reason such policy "would not have been followed in this particular case . . . I went along by getting the financial statement is why I made the loan." (Rep'rs Tr. p. 10.) The money was given to the bankrupt on January 8th, 1962.

On cross-examination, Doody stated additional facts. He *thought* he gave the blank statement to the bankrupt before the first of the year. (Rep'rs Tr. p. 12.) It was brought back on or before January 8th.

"Q. Do you remember your testimony that you got a memo in your records at the time you testified before, that on January 5th you made a written entry that you had made a $3,000 loan to the bankrupt?

"A. On the 5th?

"Q. Yes.

"A. I don't recall that, no.

"Q. That's your testimony before the referee?

"A. Could I see that?

"Q. That is on the certificate on review.

"A. You mean that the loan was made on the 5th. This is possible.

\*   \*   \*   \*   \*   \*

"Q. Then your testimony would be the same as you testified before, that you didn't know if you had the financial statement before the bankrupt got the money or not?

"A. I think to the best of my knowledge, I said I did. Now, that would leave it open as to whether I did or didn't, I guess.

"Q. You don't know—

"A. But I feel confident I did.

"Q. You don't know for sure, though?

"A. I'm not under oath going to make a definite yes for sure; I'm not going to say no, either. The policy is to have it." (Rep'rs Tr. pp. 12–14.)

The matter was submitted to the district court, and that court made the following order:

"William M. Doody was sworn as a witness and testified that it was the bank's policy to require a financial statement and to rely on it, but admitted on cross-examination that it was possible that the loan was made on January 5, 1962, which was before the financial statement was received on January 8, 1962 \*   \*   \*.

"From the record and testimony the finding of the Referee that the bank did not rely on the financial statement of the bankrupt is supported by substantial evidence and his order overruling objections to bankrupt's discharge is affirmed."

We agree with the trial court's conclusion that the referee's findings are supported by substantial evidence; whether tested by what the evidence was before the referee, or what was before the district court.

In addition, both the district court and the referee had the opportunity to observe the demeanor and conduct of the principal witness relied on by the bank (Doody) when he was on the stand. This opportunity we did not, and cannot, have. Cf.: Matter of Van Jeffreys, N.D. Pa.1942, 50 Am.Bankr.Rep.,N.S., 328.

Appellant's counsel vigorously asserts we should rely only on Mr. Doody's testimony most favorable to his client.[1] Appellant's résumé of the evidence is not realistic, and falls short of proving there was no substantial evidence to support either the trial judge's or the referee's finding that there was no reliance by the bank on the false statement.

Section 47 of Title 11 United States Code (§ 24 of the Bankruptcy Act) gives this court the power to reverse, revise or affirm, both in matters of law and in matters of fact. We *affirm*.

We do not reach the question of the blanks allegedly left in the statement by the bankrupt, and the effect thereof thereon, if any.

[1]. As for example, that although Mr. Doody allegedly stated he agreed to the loan when the bankrupt first told him about the truck, and stated, according to the referee, that he (Doody) made a written memo he had granted the loan on January 5th, 1962, that Mr. Doody's subsequent statement on each point "I don't *recall* that" (Reply Br. p. 2) *proves* that Doody had not made such statements before the referee.