In the Matter of Robert Eugene
ADAMS, Sr., Bankrupt.

In the Matter of Arthur Joseph
FIEGEN, Bankrupt.

Nos. BK72–4008, BK72–4013.

United States District Court,
D. South Dakota, S. D.

Dec. 18, 1973.

Robert L. O'Connor, Sioux Falls, S. D., for Robert Eugene Adams, Sr.

J. Bruce Blake, Sioux Falls, S. D., for Arthur J. Fiegen.

Timothy J. Nimick of Woods, Fuller, Schultz & Smith, Sioux Falls, S. D., for Time Loan Plan, Inc.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

These two cases, consolidated for purposes of decision, come before this court upon petitions for review filed by Time Loan Plan, Inc. (Petitioner), a creditor of the bankrupts. In each case, Petitioner challenges the referee's order permitting the discharge of the debt owed by the bankrupt to Petitioner. The challenge in each case is predicated upon Petitioner's contention that the loan creating the debt was extended by Petitioner in reliance upon a materially false written statement relating to bankrupt's financial condition and made by bankrupt with intent to deceive, thus precluding discharge under 11 U.S.C. Sec. 35(a)(2) (1960), amending 11 U.S.C. Sec. 35(a) (1898). Proper understanding requires separate analyses of the circumstances surrounding each bankrupt's loan transaction.

Arthur J. Fiegen applied to Petition.r for a loan of $540.00 on April 23, 1971. Mr. Fiegen had been a customer of Petitioner prior to that time and had satisfactorily paid off three notes held by Petitioner. He testified that he fully informed Petitioner of his situation—that he had just lost his business and needed money to pay accumulated withholding taxes. He was requested to fill out and sign a writing described as a "financial statement" and testimony was conflicting as to whether he was told to list all of his debts, both business and personal, at the time the request was made. Mr. Fiegen testified that he had informed Petitioner's manager that, since he was applying for a business loan, he was only going to list his business debts. Printed on the financial statement in bold red letters, however, was the sentence "Applicants must list all debts—do not under any circumstances omit any debts." The statement made no provision for a listing of assets. The referee found that Petitioner's agent had failed to explain the legal significance of a material and intentional omission of debts—he failed to explain that such an omission would deprive debtor of the protection of bankruptcy proceedings by causing the non-dischargeability of the debt owed to Petitioner. The entire credit transaction took no more than one-half hour. Petitioner made no inquiry through the credit bureau. Asked whether it was usual to do so, Petitioner's office manager testified: "Mostly, unless it is a customer we have had and, as to their pay habits, they have established them within our office." The referee made no specific finding as to the amount of debts which were omitted from the financial statement. Petitioner contends that $7000–$8000 in additional debts existed at the time of the making of the financial statement, none of which were included thereon.

Robert E. Adams applied to Petitioner for a loan of $496 on August 23, 1972. The loan was to be repaid in 24 monthly installments of $35 each for a total of $720. Mr. Adams, who had never made use of Petitioner's financial services in the past, was requested to fill out the financial statement previously described. He listed debts in excess of $28,800, omitting, however, what the referee calculated to be $1800 in debts. Mr. Adams testified that he was asked to list only his own debts and that, since the loan was being made to him and to him only, he did not list debts which he felt were owed by his wife. Since Mr. Adams was a new customer, Petitioner did telephone the credit bureau and received an oral report which was consistent with the financial statement. Petitioner's manager, Mr. Lawrence Bierman, testified that he thought he had asked for Mr. Adams' monthly debt-payment schedule, but that schedule was not reduced to a writing.

In each case the referee found that the bankrupt had not intended to deceive Petitioner, that the misrepresentation was not material and that Petitioner had not relied upon the misrepresentation. Since this court does not conclude that those findings are "clearly erroneous," they are hereby upheld. O'Rieley v. Endicott-Johnson Corp., 297 F.2d 1, 4 (8th Cir. 1961); In re Naftalin and Co., 333 F.Supp. 136 (D. Minn. 1971).

Considering the comparatively small monetary size of the omissions and the plausibility of the excuses advanced by the bankrupts, the findings of the referee that the omissions were not material and that there was no intent to deceive in either case were supported by substantial evidence. The referee made no specific finding respecting the amount of the monetary omission in the *Fiegen* case. Mr. Fiegen disclosed debts of approximately $23,000 on the financial statement. Although the record is unclear, it would appear that he omitted debts in the approximate amount of $7000. He testified that (1) he was applying for a business loan to clear up past due taxes and that he thought he was only to list his business debts and that (2) many of the debts omitted were disputed. The referee found that Mr. Adams had omitted approximately $1800 in debts, having listed debts in excess of $28,000. He testified that, since he was applying for the loan personally, he had omitted debts owed by his wife for which debts he thought he was not responsible. Considering the lack of specificity in the instructions as to what kind of debts should be listed, the lack of warning of consequences which would result from wilful and material omission, the plausibility of the excuses proffered by the bankrupts, and the relatively small monetary value of the omitted debts, I concur in the referee's conclusion that neither bankrupt committed the actual fraud necessary to preclude dischargeability. Local 155 U.A.W. Credit Union v. Zalewski, 25 Mich.App. 230, 181 N. W.2d 288 (1970).

This court also finds that any reliance upon the disclosure procedure undertaken by Petitioner in these cases is unjustified. The financial statement allegedly relied upon in each case consists of a single sheet of paper containing 22 blanks for names of creditors and amounts owed. Applicants are directed to list all of their debts, including disputed and outlawed claims, upon those 22 blanks. The application transaction is usually completed in a very short time. Mr. Fiegen testified that the entire transaction took one-half hour. Aside from a cautionary statement in small red print at the top of the sheet requesting that the applicant review his debts carefully before signing the statement, it was neither impressed upon the applicants in print nor orally that a failure to review those debts would deprive the applicants of the protection of bankruptcy with respect to omitted debts. The applicants were not requested to bring their records with them but were permitted to complete the statements from memory. The applicants were not requested to list their assets nor the amount of their monthly debt payments. In Mr. Adams' case, because he was a first-time customer, a check was made with the credit bureau. The report was made over the telephone and was never recorded. In Mr. Fiegen's case, the check was not made because Mr. Fiegen had previously done business with the Petitioner. I think it a reasonable conclusion that these previous dealings were relied upon rather than the financial statement. Sweet v. Ritter Finance Co., 263 F.Supp. 540 (D.C.Va.1967). In neither case were any further investigations undertaken. In light of these facts, I do not see how it can be reasonably contended by Petitioner that Petitioner would not have extended the loans had the misrepresentations not been made. Petitioner's disclosure procedure was woefully incomplete. The procedure did not provide for the recording of a

statement of assets, a statement of monthly payments, or a credit report. Given this incompleteness, it would not seem that the few omissions of each bankrupt would have dissuaded Petitioner. The applicants were not sufficiently apprised of the consequences of non-disclosure to warrant reliance upon the statement by Petitioner. Given this failure to caution against non-disclosure, it would seem highly unlikely that Petitioner would rely upon the financial statement to the extent alleged.

The decision of the referee, in each case, is hereby affirmed.