### In the Matter of Alvin DOLNICK, Bankrupt.
### No. 71 B 359.

United States District Court,
N. D. Illinois.
March 22, 1974.

Alex H. Dolnick, pro se.

Paul M. Lukes of Hoellen & Seyferth, Chicago, Ill., for the petitioner Bank of Ravenswood.

### MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the Referee's certification for review of the Referee's Order in which petitioner's application to determine the dischargeability of the debt due petitioners from the bankrupt

was denied and which also discharged the bankrupt from that debt.

On March 30, 1971, the petitioners, the Bank of Ravenswood, a creditor of Alvin Dolnick, the bankrupt, filed its "Specification of Objections to Discharge" which contained, *inter alia*, the following allegations:

1. On or about January 6, 1970, for the purpose of obtaining money upon credit from the Bank of Ravenswood, the bankrupt made a statement, in writing, to the said Bank of Ravenswood, respecting his financial condition, which statement was made with the intent to deceive the Bank of Ravenswood, and which written statement was materially false in several matters.

2. That statement in writing materially set forth that said bankrupt, upon January 6, 1970, owned assets in the total amount of $438,000.00 and which consisted of cash on hand and in banks, $2,000.00; United States Government Securities, $3,000.00; Unlisted Securities, $390,000.00; Real Estate owned, $40,000.00; and Automobiles and other Personal Property, $3,000.00 and that his liabilities consisted of notes payable to banks-secured, $110,000.00; Real Estate Mortgages payable $18,000.00; or total liabilities of $128,000.00 and that he had a net worth of $310,000.00. By virtue of this statement, the bankrupt obtained from the Bank of Ravenswood the sum of $50,000.00 on credit. In truth and in fact, at the time that statement in writing was made for the purpose of obtaining money on credit, the bankrupt did not owe merely $128,000.00 nor substantially that amount but owed grossly in excess of that amount.

3. Schedule A–2 of bankrupt's Petition reveals that at or about the time bankrupt executed that statement in writing, the bankrupt was indebted to the Exchange National Bank of Chicago in the amount of $125,000.00. More specifically, the bankrupt was indebted to said Exchange National Bank of Chicago in the amount of $82,500.00 on January 5, 1970 which indebtedness does not appear on the statement in writing delivered by bankrupt to the Bank of Ravenswood on January 6, 1970, this indebtedness was not otherwise known to the Bank of Ravenswood. At the time the bankrupt executed the financial statement in writing to the Bank of Ravenswood the bankrupt was indebted to the Columbie National Bank of Chicago in the amount of $20,000.00 which indebtedness does not appear on that financial statement, this indebtedness was not otherwise known to the Bank of Ravenswood. At the time the bankrupt executed and delivered the financial statement to the Bank of Ravenswood the bankrupt was indebted to Bear, Stearns and Company of Chicago, Illinois in the amount of $2,600.00 which indebtedness does not appear on said statement and which indebtedness was not otherwise known to the Bank of Ravenswood. At the time the bankrupt executed and delivered the statement to the Bank of Ravenswood the bankrupt was indebted to Earl Dolnick for a substantial sum of money, the exact amount of which is not known at this time, but which indebtedness does not appear on said statement and which indebtedness was not otherwise known to the Bank of Ravenswood. At the time bankrupt executed and delivered the statement to the Bank of Ravenswood the bankrupt was indebted to Drs. Jacobson and Rosenstein in an amount not known to the Bank of Ravenswood but which indebtedness does not appear on said

statement and which indebtedness was not otherwise known to the Bank of Ravenswood.

4. The bankrupt did not, either at the time the financial statement was made, or at any date proximate thereto, possess, after deduction of his liabilities from the value of his assets, a net worth of $310,000.00, nor substantially such amount.

5. Based upon the financial statement the bankrupt did obtain money upon credit from said Bank of Ravenswood, said statement was issued by the bankrupt knowing full well that the Bank of Ravenswood would rely upon said statement and the Bank of Ravenswood in reliance upon said statement did grant credit to the bankrupt. Further the statement was issued with such a reckless disregard by the bankrupt of the true and actual condition of his assets and liabilities as to constitute the willful issuance of a false financial statement with the intent to deceive the Bank of Ravenswood as to bankrupt's true financial condition.

On June 20, 1972, after hearing the relevant testimony and examining the relevant memoranda submitted by the parties in support of their respective positions, Referee Samuel Berke entered an order denying the Bank of Ravenswood's application seeking to prevent the discharge of the debt owed to the Bank of Ravenswood by the bankrupt Alvin Dolnick. Referee Berke, in this order, made the following findings of fact:

"A. That on January 12, 1970 the Bank of Ravenswood completed its loan to Alvin Dolnick in the sum of $50,000.00 and made payment of said sum to the Devon Bank and simultaneously therewith received from the Devon Bank 10,000 shares of Pig'N Whistle stock having a market value as of date thereof of $110,-000.00.

B. That the Bank of Ravenswood agreed to, did make and approved the aforesaid loan to Alvin Dolnick on condition that it would receive collateral of 10,000 shares of Pig'N Whistle stock as security therefor.

C. That the Bank of Ravenswood made the aforesaid loan to Alvin Dolnick in reliance upon his reputation based upon inquiries theretofore made and contingent upon the collateral security of 10,000 shares of Pig'N Whistle stock.

D. That the financial statement bearing date of January 6, 1970 was not delivered to the Bank of Ravenswood prior to January 12, 1970, but, on the contrary, was delivered to it subsequent to the date that it approved the loan of $50,000.00 and made disbursement of the proceeds thereof.

E. That Saul Binder had the authority, power and right to consider, make and approve the aforesaid loan to Alvin Dolnick without the consent, approval and authority from other officers or the Board of Directors.

F. That Saul Binder, Vice President of the Bank of Ravenswood, admittedly was not familiar with the contents of the financial statement.

G. That John Obereiner, president of the Bank of Ravenswood, was not familiar with the loan sought by Alvin Dolnick in January of 1970, nor with its approval or the payment of the sum of $50,000.00 made by the Bank of Ravenswood to the Devon Bank until after the loan was completed and the proceeds disbursed.

H. That John Obereiner was not familiar with the financial statement prior to January 13, 1970; that John Obereiner was not familiar with the contents of the financial statement, particularly

the nature, character and extent of the assets aggregating $390,000.00.

I. That the testimony of Saul Binder and the records of the Bank of Ravenswood are confusing, unclear, ambiguous and contradictory.

J. That the testimony of John Obereiner, President of the Bank of Ravenswood, is unclear, ambiguous, confusing and contradictory.

K. That the testimony of Saul Binder is in conflict and contradictory and with the testimony of John Obereiner, President of the Bank of Ravenswood."

Referee Berke, in his Order of June 20, 1972, also rendered the following conclusions of law:

"1. That Alvin Dolnick did not make, execute or deliver a financial statement to the Bank of Ravenswood prior to January 12, 1970 and prior to that date the loan from the Bank of Ravenswood to him was completed and the proceeds disbursed.

2. That the financial statement was not made or executed by Alvin Dolnick with intent to deceive the Bank of Ravenswood.

3. That the failure to include in the financial statement certain liabilities and certain assets was not done with the intent to deceive, but the liabilities and assets were inadvertently omitted from the statement.

4. That the Bank of Ravenswood did not rely upon the aforesaid financial statement in granting and approving the loan of $50,000.00 to Alvin Dolnick.

5. That no monies were loaned to or credit extended to Alvin Dolnick in reliance upon the financial statement.

6. That the Bank of Ravenswood failed in its burden to establish that the financial statement was made, executed or delivered to it on or before the date the funds were disbursed, namely, on or before January 12, 1970, or that it extended credit to Alvin Dolnick in reliance upon the financial statement."

On August 9, 1972 the petitioner filed its "Petition for Review of Referee's Order" in which the petitioner sets forth the following allegations, *inter alia*:

1. "That said Order contains Findings and Conclusions which are contrary to both the law and facts of this case, which are not supported by the record, which are clearly contrary to the manifest weight of the evidence."

2. "That the referee committed error in failing to find that the Bank of Ravenswood loaned money to the bankrupt in reliance upon the bankrupt's financial statement that showed that the only bank the bankrupt was indebted to was the Devon Bank in light of the bankrupt's admission that at the time the financial statement was executed he was indebted to other banks and that he knowingly omitted to list such other creditor banks on his financial statement and that the failure to make such a finding was contrary to the manifest weight of the evidence."

3. "That the referee committed reversible error in refusing to consider Applicant's Exhibit 4 (Original Loan History) in reaching his ultimate decision after having previously admitted said Exhibit into evidence. That the referee's refusal to consider Applicant's Exhibit 4 after said Exhibit was admitted into evidence was an error of law and was the result of the referee's prejudice."

4. "That the Conclusions of the Referee No, 1–6 of the Order herein complained of are contrary to the manifest weight of the evidence

and are based upon Findings which are contrary to the manifest weight of the evidence and which are unreasonable and improper inferences to be drawn from the testimony of the witnesses."

5. "That the Conclusions of the Referee are erroneous as a matter of law in that the Referee erroneously made Conclusions without considering all of the evidence admitted during the hearing of this cause."

6. "That Finding 'D' of the Referee that the financial statement bearing date January 6, 1970, was not delivered to the Bank of Ravenswood prior to January 12, 1970, but, on the contrary, was delivered to it subsequent to the date that it approved the loan of $50,000.00 and made disbursement of the proceeds thereof is contrary to the manifest weight of the evidence, is not a reasonable inference to be drawn from the testimony of the witnesses, is contrary to the evidence admitted during the trial which the referee refused to consider and is based on the uncorroborated testimony of the bankrupt, who admitted that he knowingly submitted a financial statement of the Bank of Ravenswood that was not correct."

7. "That Findings 'E' through 'K' of said Order are contrary to the manifest weight of the evidence, are not reasonable inferences to be drawn from the evidence and are the result of the referees' refusal to consider all of the evidence admitted during the trial of this cause."

On September 21, 1972, Referee Thomas James certified the petitioner's petition for review.

The issue presented by this review is whether the Order of Referee Berke should be reversed on the grounds that the findings and conclusions of the referee are clearly erroneous. It is the opinion of this Court that the findings and conclusions of Referee Berke in his Order of June 20, 1972 are not clearly erroneous.

## THE FINDINGS OF FACT, THE CONCLUSIONS OF LAW, AND THE ORDER ENTERED BY THE REFEREE IN BANKRUPTCY IS CONCLUSIVE WHERE THERE IS EVIDENCE TO SUPPORT THE DECISION.

██ The Bankruptcy Act of 1938 attributes a much greater finality to referee's decision in the discharge proceeding than did the prior acts. By Section 38(4), 11 U.S.C. 66(4) the referee is empowered to grant and deny discharges. A referee's opinion is no longer the mere suggestion of a special master. The final decision of a referee is subject, of course, to review by the district judge. The referee's findings of fact are to be accepted by the judge unless clearly erroneous. See Morris Plan Industrial Bank of New York v. Henderson, 131 F.2d 975 (2nd Cir. 1942); In re Rich, 134 F.2d 779 (2nd Cir. 1943); Williamson v. Williams, 137 F.2d 298 (4th Cir. 1943); In Matter of Van Jeffreys, 50 Am.Bankr.Rep.N.S., 328 (W. D.Pa.1942).[1]

In recently enacted Bankruptcy Rules, Rule 810, governing the weight accorded referee's findings, provides as follows:

"Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the ref-

1. *General Orders in Bankruptcy*, No. 37, provides as follows:

"In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, insofar as they are not inconsistent with the Act or

with these general orders, be followed as nearly as may be. But the court may shorten the limitations of time prescribed so as to expedite hearings, and may otherwise modify the rules for the preparation or hearing of any particular proceeding."

eree to judge of the credibility of the witnesses."

This Rule is a revision of the General Order 47, which courts have applied when reviewing referee's orders under Section 39, sub. c of the act, 11 U.S.C. 67(c). See Potucek v. Cordeleria Lourdes, 310 F.2d 527 (10th Cir. 1962), cert. denied 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734 (1963); Allen v. Lokey, 307 F.2d 353 (5th Cir. 1962); Mazer v. United States, 298 F.2d 579 (7th Cir. 1962). This rule defines the judge's authority in disposing of judgments, orders and findings on review in conformity with Section 2, sub. a(10) of the act, 11 U.S.C. 11(a)(10), and requires the same effect to be given the referee's findings as Rule 52(a) of the Federal Rules of Civil Procedure accords to the findings of the trial court.[2]  Gross v. Fidelity & Deposit Co. of Md., 302 F.2d 338 (8th Cir. 1962); Simon v. Agar, 299 F.2d 853 (2nd Cir. 1962).

■ After carefully examining the testimony of the relevant witnesses, the memoranda and all the exhibits presented by the parties in support of their respective positions, it is the opinion of this Court that the findings of fact, conclusions of law and order of the referee, entered on June 20, 1972 in this action, which denied the petitioner's objections to discharge of its debt pursuant to Section 17, sub. a(2) of the Act, 11 U.S.C. 35(a)(2), are not clearly erroneous. Accordingly, such an order of the referee should not and cannot be reversed by a district court.

■ The provisions of the Bankruptcy Act created the broad discharge medicament for the financially sick debtor. The Bankruptcy Act was designed by Congress to give a debtor, hopelessly mired in debt, an opportunity for a fresh start. Local Loan Co. v.

Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L. Ed. 1230 (1933). The denial of a discharge under the Bankruptcy Act is a most punitive measure directed against bankrupts who have obtained credit on the basis of intentionally false statements. See In re Lovich, 117 F.2d 612 (2nd Cir. 1941); In re Rosenfeld, 262 F. 876 (2nd Cir. 1919). In weighing the facts put forward in a contest over a discharge, a court should keep in mind the beneficial policy allowing the honest debtor to get a new start in business and life and should construe Section 17 of the Act strictly against the objections and liberally in favor of the bankrupt. In re Tabibian, 289 F.2d 793, 795 (2nd Cir. 1961). See also Gross v. Fidelity & Deposit Co. of Md., *supra*.

■ A financial statement which is merely erroneous but is not prepared with any intention to deceive is not a false statement within the meaning of Section 14, sub. c(3) and 17, sub. a(2) of the Act. Feldenstein v. Radio Distributing Co., 323 F.2d 892 (6th Cir. 1963); Schapiro v. Tweedie Foot Wear Corporation, 131 F.2d 876 (3rd Cir. 1942); Third National Bank v. Schatten, 81 F.2d 538 (6th Cir. 1936).

■ In order for Section 17, sub. a(2) to bar a discharge, the party alleging fraud must meet the requirements of proving positive fraud. That is, the alleged fraudulent representations must have been made with an intent to deceive and defraud, and the creditor must have relied on the representations in acting to his prejudice. Bazemore v. Stehling, 396 F.2d 701 (5th Cir. 1968); Greenfield State Bank v. Copeland, 330 F.2d 767 (9th Cir. 1964); Sweet v. Ritter Finance Co., 263 F.Supp. 540 (W.D. Va.1967).

■ The Bankruptcy Act of 1938 conferred upon the referee the power to

---

2. This same standard is prescribed by Rule 752(a) and Rule 914, which govern the review of findings of fact in adversary proceedings and contested matters in bankruptcy cases, whether such findings are made by a referee or district judge. This rule is not subject to suspension or modification by local rule or order. See Rule 814. This rule does not retain the provision of General Order 47 authorizing receipt of further evidence by the district judge in connection with a review of a referee's order or finding. See 2 Collier on Bankruptcy, Para. 39.28 (1968).

hear and pass upon objections to petitions for discharge, and this Court may not set aside his order upon such petition merely because the testimony might lead it to a different conclusion. Before the referee's judgment may be reversed the Court must find that no testimony exists for the support of his order, or that he has acted arbitrarily and capriciously. After carefully reviewing the record in this action, no such finding is possible. The referee had the witnesses before him, and it was for him to pass upon their credibility. Were this Court to undertake to reverse his judgment, although not having viewed the witnesses, it would be acting arbitrarily and capriciously. Of course, the district judge has the responsibility of reaching the right conclusion on review, and there is no doubt that he has the power to reverse the referee's decision on the evidence where it is clearly erroneous. However, the instant record clearly reveals that this action is not such a case.

Accordingly, it is hereby ordered that Referee Berke's Order of June 20, 1972 is approved as being proper and just and not clearly erroneous.