**In re John A. FERRO, Debtor.**

**GOVERNMENT EMPLOYEES CREDIT UNION OF MAINE, Plaintiff,**

**v.**

**John A. FERRO, Defendant.**

**Bankruptcy No. 79–1628–HL.**

United States Bankruptcy Court, D. Massachusetts.

March 3, 1980.

## MEMORANDUM ON DISCHARGEABILITY

HAROLD LAVIEN, Bankruptcy Judge.

The debtor filed an original petition under Chapter XIII of the Bankruptcy Act on August 30, 1979. The plaintiff in this action, Government Employees Credit Union of Maine (Credit Union), seeks a determination of nondischargeability of two unsecured loans on the grounds that such loans were procured by means of false financial statements provided by the debtor with the intent to defraud the plaintiff under Sec. 17a(2) of the Bankruptcy Act.

The debtor is a former undercover federal narcotics agent who was placed on sick leave in August, 1978 because of a job-related nervous and emotional breakdown. During the time period relevant to this proceeding the debtor was under the care and treatment of both a psychologist, who testified in these proceedings, and a psychiatrist. Although it would appear that the debtor is not psychotic, he "felt hunted and haunted." He was not able to make realistic long-range evaluations of his economic or social environment at the relevant times and continuing to the present time, eighteen months after leaving the stresses of his employment. The debtor continues to receive treatment for his condition and apparently has not yet fully recovered as was evidenced by his inability to retain his composure during the questioning on the witness stand. I reluctantly delve into this brief background only because of the virulent attack by the plaintiff as to the debtor's intent. The plaintiff alleges a deliberate and calculated scheme to defraud on the part of the debtor. Even without the background presented, I would find no such intent to defraud.

Trial on the merits resulted in the following findings of fact. There are two loans which the plaintiff contends should be determined to be nondischargeable. On August 21, 1978, the debtor applied for a $2,500 unsecured loan from the plaintiff Credit Union. The plaintiff granted this loan on August 25, 1978. The plaintiff claims that the debtor failed to disclose certain outstanding indebtednesses at the time of submitting the application and thereby falsely and materially misrepresented his financial condition to obtain the $2,500 loan from the Credit Union. At trial, however, the evidence clearly indicated, and I so find, that the debtor had disclosed his then existing obligations. The alleged undisclosed indebtednesses complained of by the plaintiff were actually incurred by the debtor after approval and, in fact, payment of the loan by the Credit Union. On the same day as the debtor applied for this loan, August 21, 1978, he did send checks to two creditors, one for $1,070 and one for $259. The Credit Union objects that, because the checks did not clear for two or three days, these were debts that should have been listed. The denial of a discharge or dischargeability requires a conscious intent. *In re Wright*, 515 F.2d 260, 264 (9th Cir. 1975). This debtor, and I suspect most of us, consider in common parlance payment made when the check is sent and if that is technically incorrect it certainly is not the intent required under section 17a(2) of the

Bankruptcy Act. Therefore, this debt is dischargeable and I so find.

The facts surrounding the second loan obligation are as follows. On August 23, 1978, the debtor submitted a loan application for $2,500 to the Canal Bank-Lewiston. This application was initially rejected by the Canal Bank on August 28, 1978 because of "too short a period of residence." On September 26, 1978, the debtor applied to the plaintiff Credit Union for a further loan in the amount of $4,800. The plaintiff, after raising some questions as to the use of the loan, granted this loan on October 12, 1978. The debtor's loan application to the Canal Bank-Lewiston in the amount of $2,500 was approved on September 26 or 27 and the debtor signed the note and received the funds on the 27th. The debtor did not inform the plaintiff of this loan. The plaintiff contends that the debtor had a legal duty to disclose the intervening change in financial condition and that the actions of the debtor in failing to disclose the obligation was part of a scheme devised to defraud the plaintiff. There was nothing on the application of the Credit Union asking for information as to other loan applications or requiring information of any new obligations between the application and the loan. The September 26th application was accurate. No new form was required on October 12th and the debtor was not asked for any information on additional obligations.

■ Section 17a(2) of the Bankruptcy Act provides that a discharge shall release a debtor from all of his provable debts except such as

> are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . .

11 U.S.C. § 35a(2).

A determination of nondischargeability under section 17a(2) requires a finding of ac-

tual intent to defraud on the part of the debtor. *See, e. g., In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975); *In re Blessing*, 442 F.Supp. 68, 70 (S.D.Ind.1977); *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill.1974); *In re Adams*, 368 F.Supp. 80, 82 (D.S.D. 1973); 1A *Collier on Bankruptcy* ¶ 17.16[6] at 1650 (14th ed. 1978). The court agrees with the plaintiff's statement of tort law that in certain circumstances an individual who knows that a statement, although true when made, has become false may have a duty to disclose a change in conditions. *See, e. g., Stevens v. Marco*, 147 Cal.App.2d 357, 305 P.2d 669, 682–83 (App.Ct.1956); W. Prosser, *Handbook of the Law of Torts* § 106 at 695–99 (4th ed. 1971). This general rule, however, is insufficient by itself to establish fraudulent intent for purposes of a determination of nondischargeability under section 17a(2) of the Bankruptcy Act. Unlike certain tort concepts which may make nonfeasance actionable in the form of innocent misrepresentation, a determination of nondischargeability under section 17a(2) requires a finding of actual intent. Furthermore, an intent to defraud cannot be implied to bar a discharge of a debt. *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975); *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill. 1974); *In re Adams*, 368 F.Supp. 80, 82 (D.S.D.1973). It is within the exclusive jurisdiction of the bankruptcy court to determine questions of fraudulent intent for purposes of section 17a(2), *see, In re Houtman*, 568 F.2d 651, 653 (9th Cir. 1978); *In re Godfrey*, 472 F.Supp. 364, 371 (M.D.Ala. 1979); and such fraudulent intent as interpreted under the Bankruptcy Act requires a knowing, deliberate and actual intent to defraud. *See, In re Wright*, 515 F.2d 260, 264 (9th Cir. 1975); *cf. Forsyth v. Vehmeyer*, 177 U.S. 177, 182, 20 S.Ct. 623, 625, 44 L.Ed. 723 (1900).

■ In the present case, the debtor testified that he was unaware of any obligation to inform the plaintiff of the subsequent receipt of the Canal Bank loan. Having seen and heard the witness, I found him credible and find there was no intentional misrepresentation by the debtor. The poli-

cy underlying the bankruptcy act favors the granting of discharges to enable the debtors to make a fresh start. The plaintiff has failed to meet the burden of proving an intentionally false financial statement. I find as fact that the debtor did not intend to defraud the plaintiff by failing to disclose the subsequent loan from the Canal Bank and, hence, I find such debt to be dischargeable.

The Credit Union also makes reference to the fact that on October 16, 1978 the debtor availed himself of an open line of credit at the Boston Five Cents Savings Bank to the extent of $3,300. Surely this transaction, occurring well after both loan transactions with the plaintiff had been completed, cannot be considered a willful omission from the financial statements. If the purpose of the reference is to evidence and evil plan, I find such evidence of collateral events to be unpersuasive and that no such plan exists.

The plaintiff has offered no evidence of an actual false financial statement, but nevertheless seeks to establish fraudulent intent by attempting to construct a scheme to defraud from a number of unrelated transactions merely because of the proximity of dates. None of the transactions by themselves are evidence of any impropriety.[1] The court heard testimony in the form of medical opinion that the debtor was in a disoriented state and was incapable of forming the required fraudulent intent. Indeed, the debtor's testimony regarding the purchase of an overpriced house which he not only did not need but which also would have required substantial remodeling and repair to meet his requirements, emphasizes this state of disorientation and

confusion. The debtor was willing to borrow and spend as long as others were willing to lend the funds; however, he used no deliberate misrepresentation.

Although intent frequently has to be proved by circumstantial evidence, the creditor has a heavy burden to overcome the presumptions in favor of discharge and a fresh start. The creditor in this proceeding has presented little more than the righteous indignation of any lending institution that is disappointed by the actions of its customer in seeking through bankruptcy to avoid his obligations to them and frustrated by what they perceive as the debtor-oriented philosophy of the Bankruptcy Act.

---

1. A line of cases involving the use of credit cards is somewhat analogous to the present case to the extent that proof of fraudulent intent is sought to be based on the timing of a series of transactions. For example, a series of purchases of less than $50 each (which will go unchecked by the merchant) is not by itself evidence of wrongdoing. A series of purchases of less than $50 each, however, when the debtor has exceeded his credit limit may evince fraudulent intent. See, e. g., In re Brewster, 5 Bankr.Ct.Dec. 783, 785 (E.D.Va.1979) (and cases cited therein). Even in cases involving spending in excess of credit limits, courts have frequently found an implied waiver on the part of the bank unless the bank has taken affirmative action either to notify the debtor that he has reached his credit limit or to revoke the credit card privileges. See, e. g., In re Curcio, 5 Bankr.Ct.Dec. 1131, 1132 (E.D.Mich.1979); In re Whitehead, 2 Bankr.Ct.Dec. 1647, 1650–51 (Utah 1976). In any event, it is important to note that in all of these cases in which the debts were determined to be nondischargeable there was at least some evidence of wrongdoing such as spending beyond the credit limit. There is no evidence of wrongdoing in the present case.