In re Errol G. DUPLESSIS, Bankrupt.

**HOUSEHOLD FINANCE CORPORATION,**
Plaintiff,

v.

**Errol G. DUPLESSIS, Defendant.**

Bankruptcy No. 77–2213–L.

United States Bankruptcy Court,
D. Massachusetts.

July 9, 1981.

Robert E. Fierman, Barsh and Cohen, P.C., Chestnut Hill, Mass., for Household Finance Corp.

Steven J. Marullo, Marullo & Barnes, Boston, Mass., for defendant, Errol G. Duplessis.

## MEMORANDUM RE DISCHARGEABILITY OF A DEBT

THOMAS W. LAWLESS, Bankruptcy Judge.

On November 25, 1977, the plaintiff, Household Finance Corporation, filed a complaint seeking a determination by this Court that pursuant to Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), a debt owed to it by the defendant/bankrupt, Errol G. Duplessis (the "bankrupt") is non-dischargeable. The plaintiff alleges that the bankrupt, through the use of a false financial statement, fraudulently obtained a loan from the plaintiff in the amount of $3,000.00. Specifically, the plaintiff contends that when the bankrupt applied for and received the loan, he submitted a financial statement which failed to disclose the bankrupt's joint and several liability of approximately $40,000.00 on a note to the Unity Bank and Trust Company ("Unity Bank"). Asserting that it had relied on the representations contained in the financial statement in extending the loan and that it would not have entered into such a loan transaction had been aware of the bankrupt's actual financial status, the plaintiff argues that the bankrupt's liability on the loan should not be discharged in this bankruptcy proceeding.

The bankrupt, on the other hand, maintains that the financial statement supplied to the plaintiff fully and accurately reflected his indebtedness as of the time the financial statement was submitted. While admitting that the note to Unity Bank was not included in the financial statement, the bankrupt contends that such omission was neither a misrepresentation nor an attempt to deceive the plaintiff. In support of this position the bankrupt points out that his liability on the note to Unity Bank was only that of a guarantor and at the time the financial statement was submitted to the plaintiff, the primary obligor was not in default on the note. Therefore, according to the bankrupt, since the financial statement required that he disclose his indebtedness and at that time he was not, in fact, indebted on the Unity Bank note, the bankrupt asserts that it was neither relevant nor necessary to include this contingent liability on the financial statement. Alternatively, the bankrupt contends that even if this Court determines that such a contingent liability should have been disclosed, the failure to include the note was the result of a mistake by the bankrupt and was not done with the intent of deceiving or defrauding the plaintiff.

A trial was held on the plaintiff's complaint and based upon the testimony and the documents received into evidence, I find the facts to be as set forth below.

In early 1974 the bankrupt's wife, Laurel Duplessis, and one Patrica Clark ("Clark"), officers of a newly-formed corporation, Seitu Cards, Incorporated ("Seitu Inc."), applied to Unity Bank for a loan of $40,000.00 to be used in starting up the corporation. Unity Bank informed Laurel Duplessis and Clark that it would be willing to extend the loan if, among various other conditions, they could secure the participation of the Small Business Administration (the "SBA") in the loan as a guarantor. The evidence demonstrated that the SBA, in turn, agreed to act as a guarantor on the loan provided that the bankrupt would personally guarantee repayment on the promissory note by Seitu Inc.

On March 20, 1974, Unity Bank granted a loan of $40,000.00 to Seitu Inc., and a promissory note in that amount was executed in favor of the Unity Bank. The promissory

note, which contains the provision that the "undersigned jointly and severally [promise] to pay", was signed by Laurel Duplessis and Clark as officers of Seitu Inc. and by Laurel Duplessis, Clark, and the bankrupt in their individual capacities.

At the trial the bankrupt testified that while he did, in fact, sign the promissory note to Unity Bank, he did so with the understanding that he was signing as a guarantor and that therefore he was not primarily liable on the note. Apart from the note itself, the evidence adduced is consistent with the bankrupt's belief that his liability was that of a guarantor. The uncontradicted evidence demonstrated that the bankrupt never received any of the proceeds of the loan and never made any payments on the promissory note to Unity Bank. Rather, all payments on the note were made by Seitu Inc. on checks drawn by the officers of that corporation and the bankruptcy lacked the authority to be the signatory on the corporation's checks. Moreover, there was no evidence which showed that at the time the bankrupt filed out the financial statement on August 30, 1974, Seitu Inc. had defaulted on its obligation to repay the Unity Bank note. In fact, the bankrupt testified, and it is not disputed, that demand was first made on the bankrupt for repayment of the promissory note in November 1976, more than two years after he had submitted the financial statement to the plaintiff.[1] The bankrupt testified that up until the time, he did not believe that he was obligated to Unity Bank or the SBA, and therefore had no reason to disclose that transaction on the financial statement as part of his indebtedness.[2]

On August 30, 1974, the bankrupt applied for and received a loan of $3000.00 from the plaintiff.[3] As noted above, as part of the loan application process, the bankrupt furnished to the plaintiff a written financial statement which required a full and com-

plete disclosure by the bankrupt of all of his indebtedness. It is not disputed that the bankrupt did not disclose any information regarding the transaction with Unity Bank either on the financial statement or orally to the plaintiff at the time the bankrupt applied for this loan.

The bankrupt subsequently filed a voluntary petition in bankruptcy. On his schedule of unsecured debts, the bankrupt included the debt of $43,000.00 to the SBA.

During the course of the trial, this Court stated that the evidence demonstrated that in the underlying loan transaction involving Unity Bank, the bankrupt had intended to act simply as an accommodation party for the benefit of Laurel Duplessis and Clark on the promissory note in order to enable them to obtain the loan for their newly-formed corporation, Seitu Inc. The Court was satisfied that while the bankrupt's signature did appear on the promissory note to Unity Bank as a co-maker, the bankrupt had intended and believed that his liability was that of a guarantor who would only become obligated to pay the note upon a default of the primary obligor. Further examination of the testimony and the exhibits received into evidence confirms this earlier view. I find, therefore, that at the time he submitted the financial statement to the plaintiff, the bankrupt believed that since Seitu Inc., the primary obligor on the promissory note to Unity Bank was not in default, he was not obligated on that note.

As pointed out by the parties, § 17(a)(2) of the Bankruptcy Act is the relevant provision in determining whether the bankrupt's debt to the plaintiff is dischargeable under the circumstances involved in this case. That section, in pertinent part, provides:

A discharge in bankruptcy shall release a bankrupt from all his provable debts whether allowable in full or in part, except such as . . . .

---

1. Demand for repayment of the note was made on the debtor by the SBA. While there is no evidence in the record on this point, apparently the SBA having paid Unity Bank under its guaranty was seeking repayment from the bankrupt.

2. In 1976 after becoming aware of his liability on this promissory note, the bankrupt notified the plaintiff of that circumstance.

3. At the trial the plaintiff stated that the present amount of the debt owed to it was $1,836.64.

(2) are liabilities for ... obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be published in any manner whatsoever with intent to deceive...

This section of the Bankruptcy Act, which has been the subject of numerous judicial decisions has consistently been given a strict interpretation. *See, e. g., In re Vickers*, 577 F.2d 683, 687 (10th Cir. 1978). It is well-settled that in order to have a debt determined nondischargeable pursuant to this section, the following five elements must be demonstrated:

(1) The debtor made the representations; (2) that at the time he knew they [the representations] were false; (3) that he made them with the intention of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975) (*quoting, Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967)). Furthermore, it is the party objecting to the discharge of a particular debt (herein the plaintiff) who has the burden of demonstrating the existence of each of these elements. *In re Nelson*, 561 F.2d 1342, 1346 (9th Cir. 1977); *In re Taylor, supra* at 1373.

■ Under the circumstances of this proceeding the critical question involves the bankrupt's state of mind at the time he submitted the financial statement to the plaintiff. That is, has it been adequately demonstrated that the bankrupt's failure to disclose the transaction with Unity Bank on the financial statement was done with the intent of deceiving and misleading the plaintiff?

The plaintiff argues that the record reveals that the bankrupt did possess the requisite intent to deceive. In support of this assertion, the plaintiff points out that the bankrupt through his background as an equal opportunity specialist with the Department of Health, Education and Welfare as well as his experience in various loan transactions had a sophisticated knowledge of financial matters. The plaintiff further contends that possessing such knowledge, the bankrupt knew (or was reckless in not knowing) that he had signed the note to Unity Bank as a co-maker and was, therefore, primarily liable on the note. Relying on these factors the plaintiff urges this Court to draw the inference that the bankrupt, knowing that his liability on the Unity Bank note would jeopardize his ability to obtain a loan from the plaintiff, intentionally omitted the Unity Bank transaction from the financial statement in order to mislead the plaintiff as to the bankrupt's actual financial situation.

The record, however, simply does not support the conclusion of the plaintiff that the bankrupt was motivated by a fraudulent intent when he omitted the Unity Bank transaction from the financial statement. In the first instance, contrary to the plaintiff's assertion, the record does not demonstrate that the bankrupt was sophisticated in financial matters at the time he filled out the financial statement. There was no evidence adduced, for example, that the bankrupt's employment as an equal opportunity specialist even involved financial matters or that any other aspect of the bankrupt's background gave him anything more than a layman's knowledge of financial affairs.

In addition, and even more significantly, the bankrupt testified, and this Court has found, that at the time he submitted the financial statement, the bankrupt believed that he was not indebted on the Unity Bank note and would only become obligated upon a default of the primary obligor. The bankrupt's testimony on this matter was credible, plausible, and as noted above, with the exception of his signature on the promissory note as a co-maker, consistent with the other evidence contained in the record (*i. e.*, the bankrupt did not receive any of the proceeds from the loan, had not made any payments on the promissory note to Unity Bank at that time, and did not receive any notification or any demand for payment until two years after the financial statement had been submitted to the plain-

tiff). Moreover, the somewhat convoluted process by which the loan was obtained from Unity Bank might reasonably explain the bankrupt's failure to fully comprehended the legal ramifications of having signed the note as an accommodation party.[4]

The bankrupt further testified that since he believed he was not indebted on the promissory note to Unity Bank and that the plaintiff's financial statement requested disclosure only of the bankrupt's debts and liabilities, it. was unnecessary as well as irrelevant for him to include his contingent obligation to Unity Bank on that financial statement. Again here, the bankrupt's testimony was credible and uncontradicted. The record supports the bankrupt's assertion that under the circumstances his failure to disclose what he believed was a contingent liability was neither unreasonable nor done with a fraudulent intent. *See generally, In re Cross*, 3 BCD 615 (N.D.Cal. 1977). In addition to this bankrupt's uncontradicted testimony on this point, it should be noted that the plaintiff's financial statement could have, but did not, request that contingent liabilities be disclosed. Also, there was no evidence that at the time the bankrupt filled out the financial statement, the bankrupt had any reason to believe that there was a likelihood that his contingent liability would ripen into an actual obligation.

Therefore, on the record before the Court, the plaintiff has not satisfied his burden of demonstrating that the bankrupt fraudulently omitted the Unity Bank transaction from the financial statement (or even that he was reckless in not disclosing that information). Even assuming that the plaintiff was correct in his assertion that the bankrupt was primarily liable as a co-maker on the note to Unity Bank and that such information should have been disclosed, would not alter the Court's finding

on this issue of intent. For even in that case the record would indicate only the bankrupt was acting under a reasonable but mistaken belief as to the nature of his liability and still would not demonstrate an intent to deceive. And a financial statement which is merely erroneous but which is prepared without an intent to deceive does not satisfy the requirement of § 17(a)(2). *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill.1974). Thus, regardless of the nature of the bankrupt's liability on the promissory note to Unity Bank, the evidence does not satisfy the plaintiff's burden under § 17(a)(2) to demonstrate the requisite intent to deceive.[5]

In light of this determination, the Court accordingly holds that the bankrupt's obligation to the plaintiff is a dischargeable debt.

---

4. In this regard it is interesting to note that Barbara Johnston, an employee of the SBA and called as a witness by the plaintiff continually characterized the bankrupt's liability on the note as being that of a guarantor. While not necessarily relevant to the Court in determining the bankrupt's actual liability on the promissory note to Unity Bank, it is nevertheless indicative of some of the confusion among the parties

to the transaction as to the nature of the bankrupt's liability.

5. In light of this finding it is unnecessary for the Court to determine the actual nature of the bankrupt's liability on the promissory note to Unity Bank and expresses no opinion on that issue herein.