**In the Matter of Lester A. BECKER, Petitioner and Appellant,**

v.

**SEABOARD FINANCE COMPANY, Respondent and Appellee.**

No. 24809.

United States Court of Appeals, Ninth Circuit.

Dec. 24, 1970.

A. Lee Adair (argued), of Adair, King, McClary & Green, Newport Beach, Cal., for petitioner-appellant.

Herbert F. Smith (argued), of Share & Smith, Los Angeles, Cal., for respondent-appellee.

Before BARNES, DUNIWAY, and ELY, Circuit Judges.

BARNES, Circuit Judge:

Appellant, a bankrupt, appeals from a District Court order of May 16, 1969, affirming the Referee's order of November 14, 1968, denying his discharge in bankruptcy, upon the objection of appellee, based upon alleged false representations contained in appellant's financial statement submitted to appellee (dated December 3, 1963), for the purpose of obtaining money on credit.

Some thirteen alleged issues are raised by appellant. Most go to questions of "intent", "reliance", "status", and a procedural problem relating to amendments to the specifications of objections to discharge.

As appellant's counsel stated at oral argument, the principal errors relied upon by appellant were the findings of both Referee and the District Court that the value of Marshall Land and Cattle Company, C & A Land Corporation, and Santa Maria Acres, Inc., were each overstated, and that the appellant's $1,275,-000 note payable to the Cerulli Brothers should have been included on the financial statement.

The question before this Court is a narrow one. It is not how we might or might not have interpreted the evidence before the bankruptcy Referee and the District Court, but whether the Referee's ruling, denying the discharge as affirmed by the District Court, was clearly erroneous, and without any foundation in fact. Wylie v. Ward, 292 F.2d 590 (9th Cir. 1961)

Rule 52(a) of the Federal Rules of Civil Procedure provides that:

"Findings of fact shall not be set aside unless clearly erroneous, and due

regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses."

"The standard which must be met by an appellant attempting to prove a lower court's findings of fact was 'clearly erroneous' is a stringent one; to be convinced, this court must be 'left with the definite and firm conviction that a mistake has been committed'. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1947)." Seligson v. Roth, 402 F.2d 883, 886 (9th Cir. 1968).

An examination of the record in this case does not leave us with the conclusion that any mistake occurred.

1. Dr. Becker listed a value of $173,-708 for his interest in Marshall Land and Cattle Company, computed by taking 18% of the net worth of the company as shown on its balance sheet of 7/31/63 [Obj.Ex. 9]. That sheet indicates the capital account was stated at $50,000, and amount due from officers, $50,000. Neither Dr. Becker nor one of his principal associates knew if they had paid for their stock in the company. Dr. Becker stated he had received a bill from the State of Colorado for $9,000 which represented his payment for his interest in the company, but that he had not paid this bill. The Referee concluded there was no capital contributed to Marshall Land and Cattle Company.

There was testimony this company was taken over by Dr. Becker and certain associates in June of 1963, for a total consideration of $40,000 to $50,000. The July 31, 1963 balance sheet of this company showed a capital account of $965,000[1] (represented by capital stock of $50,000, capital surplus of $665,000 and operating surplus of $260,000). (It was 18% of this capital account that produced the figure of $173,708 used on Dr. Becker's statement.)

*The Referee concluded* that the capital account was fictitious, and the bankrupt,

being one of the directors of Marshall Land and Cattle Company *could not have believed in good faith* that his interest could have been valued at $173,708.00. The company was liquidated in bankruptcy one year later.

2. Dr. Becker listed a value of $668,-799 on his statement [Obj. Ex. 1] for his 11% interest in C & A Land Corporation, based on its balance sheet of August 20, 1963 [Obj. Ex. 8].

C & A Land Corporation had been owned by the Cerulli Brothers, who were in financial trouble. Dr. Becker and his group came to their rescue "to refinance all the properties". Objector's Exhibit 8 showed a capital account of this company of $6,079,000; made up of stock—$50,000, capital surplus—$5,741,000, operating surplus—$290,000. The land was in Arizona and Colorado. The Arizona land (900 acres, valued at $3,-576,000 or almost $4,000 per acre) was leased by the C & A company with an option to buy, which option was never exercised. The Colorado land, valued at $3,165,000, was acquired by refinancing $1,100,000 in loans, nothing additional being paid for the land.

*The Referee concluded* that the bankrupt *could not in good faith have believed* that his 11% interest in this land was worth $668,000. Again, in two years the company ended in bankruptcy.

3. Dr. Becker listed the value of his 45.7% interest in Santa Maria Acres, Inc., at $2,042,000 of a total valuation of $5,228,000 as shown on its balance sheet of October 31, 1963. (Bankrupt's Ex. 1). Six months prior to October 31, 1963, the same corporation valued the land, on April 30, 1963, *at its cost:* $1,-350,570. Six months after October 31, 1963, or on April 30, 1964, the same corporation reduced the value of the land to $3,300,000. No reasonable explanation of this extreme fluctuation was forthcoming. Chapter XI proceedings in bankruptcy followed.

*The Referee concluded* that the bankrupt *could not have reasonably be-*

---

1. Most figures used herein are approximate.

*lieved* the value of his interest was the $2,000,000 given for Santa Maria Acres, Inc.

The Court's reaction to such statements of value was clear. It stated:

"The court feels that if financial statements are to have any integrity whatsoever, misstatements of value as glaring as those appearing here must be recognized as false financial statements. This debtor in his financial statement has made the representation that he was * * * worth in excess of $5,000,000.00. Nearly $3,000,000.00 of that sum was puffing of the value of three stocks above mentioned."

4. Dr. Becker did not disclose five promissory notes executed to Cerulli Brothers, totaling $1,275,000 on which he was a primary signer, or guarantor, of the notes, dated August 29, 1963.

Dr. Becker asserted these notes were never to be enforced, by reason of a "side agreement" that they were to be surrendered upon delivery of 40% of the C & A Land Corporation stock to the Cerullis. Nevertheless, they apparently were negotiable instruments; had no mention of conditional payment in them; and were actually sued upon by the trustee in bankruptcy for the Cerulli Brothers. Such a liability, even if contingent, should have been listed in the August 20, 1963 statement. 1 Collier, Bankruptcy (14th Ed. Para. 14.3, 1.1377).

We think we need go no further into the details of this case. Appellee lists fourteen additional *omitted liabilities*, one from Objector's Exhibit 1, a typographical error of $400,000 (excused by the Referee as unintentional); the others, unlisted second trust deeds, pending litigation asking for damages, bank notes and bank guarantees, promissory notes (unconditional on their face), lease liabilities, etc. totaling at least one million dollars. The financial statement requested and delivered required a listing of contingent liabilities [Obj. Ex. 1].

On such a record it would be impossible for us to hold, as a matter of law, that the lower court's decision was either clearly erroneous or without any foundation in fact. Reliance upon some auditor's figures is not, in a case such as this, any defense to the charge that if there was no actual intent to deceive, the representation as to worth was made, at the least, with a reckless indifference to the actual facts as to value, well and clearly known to Dr. Becker.

We affirm.