421 F.Supp. 1387 (1976)
In re Carl Lynn KNIGHT and Linda Wilson Knight, Bankrupts.
CITY NATIONAL BANK OF BATON ROUGE, Plaintiff,
v.
Carl Lynn KNIGHT and Linda Wilson Knight, Defendants.
Nos. 75-480, 75-481.
United States District Court, M. D. Louisiana.
November 5, 1976.
*1388 Judith Atkinson Chevalier, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, La., for plaintiff-appellant.
William H. Brown, Baton Rouge, La., for defendants-appellees.
E. GORDON WEST, District Judge:
Carl Knight and Linda Knight were adjudicated bankrupt in a voluntary petition filed on October 7, 1975. Subsequently City National Bank of Baton Rouge filed a creditor's objection to the discharge, alleging that Carl Knight had obtained credit from them by means of a fraudulent financial statement, and urged that this debt be declared by the referee to be nondischargeable under § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2). That statute provides, in pertinent part:
"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another; . . ."
After a hearing on the matter, the referee denied the complaint and decreed the debt dischargeable. This appeal resulted.
It appears from the record that on February 25, 1975, Mr. Knight obtained a loan of $1,300.00 from City National Bank of Baton Rouge. In order to qualify for the loan, Knight was required to fill out a financial statement which, among other things, called for a listing of assets and debts of the applicant. The applicant is instructed to "List ALL DEBTS whether or not they are to be paid from proceeds of loan." Knight admits that he neglected to list several debts, including one owed to Mrs. Ann Miller Powell for $10,000.00. This was a personal loan not evidenced by any writing. Additionally, in the space provided on the statement for disclosure of "Applicant's *1389 Monthly Take-Home Pay," Knight entered the sum of $1,100.00. At the hearing on the objection, he admitted, and his paycheck stubs confirmed, that his monthly take-home pay normally amount to approximately $700.00, and that his gross pay was usually in the area of $1,000.00. City National bases its exception to the discharge primarily on these facts, contending that Knight obtained the loan by means of fraudulent misrepresentations made with intent to deceive, which were relied upon by the creditor in granting the loan, all within the meaning of § 17(a)(2) of the Bankruptcy Act. Knight testified that he did not intend to deceive the bank, but that the error in reporting his take-home pay was an inadvertent one. Likewise, he testified that Robert Mathis, the bank's loan officer, told him that any four creditors would be a sufficient number to include on the statement, and further, that the debt of $10,000.00 owed to Mrs. Powell was not listed because he thought that "only binding contracts" were contemplated by the instructions, which to him meant only those contracts which were "written."
The evidence adduced casts serious doubt on Knight's explanation in several respects. First, it appears that Mr. Knight is a high school graduate, and the transcript bears out that he is both intelligent and articulate. As such, it is difficult to believe that he did not understand the instructions on the loan application's financial statement. He admits, too, that he realized that the loan owed to Mrs. Powell was a "debt." Secondly, it was shown at the hearing that Mr. Knight keeps meticulous bi-weekly records of his expenditures and obligations; his financial condition is carefully monitored and kept current. He testified, however, that in filling in the financial statement, he listed his debts from memory. Thirdly, Mr. Knight acknowledges that he knew that the payments on the Powell loan, at $200.00 per month, and later at $150.00 per month, constituted a "substantial amount" for a person in his financial condition to be paying. Finally, Knight testified that he reported the purpose of the bank loan to be that of paying other debts, when it may be that he used part of the proceeds to aid his son in purchasing a car.
Mr. Mathis, who approved the loan, testified that he relied on the financial statement and would not have extended credit had he known of Knight's other debts. He also testified that he specifically tells all applicants for credit to list all of their debts. He further stated that Knight's avowed intended use for the proceeds was the purchase of an automobile for his son.
While much of the evidence tends to conflict with, and, as a result, detract from appellee's case, there are also several favorable factors. City National Bank's records show the following:
1. Neither the list of assets nor the list of liabilities on Mr. Knight's financial statement were ever totalled, there being a space provided for that purpose. Mr. Mathis testified that Knight had had five previous loans with the bank and that all had been satisfactorily handled. In the words of Mr. Mathis, Mr. Knight had "a good track record" with the bank. It was shown that the bank had extended a $1,500.00 line of credit on a Master Charge account to Knight due to his good credit rating, and was at that time considering him for an "R-1" account. Although this was never specifically explained, from the context of the testimony it appears to refer to a preferred customer status account. The Court agrees with the Referee that these facts provide a basis for finding that the bank might not have relied solely or substantially on the strength of the financial statement in approving the loan.
2. At the time the petition in bankruptcy was filed, Knight had already made five monthly payments, out of a total of twenty-four on this loan, which tends to establish that Knight initially intended to pay the debt. This fact taken by itself raises a significant question to the Bank's theory of deceitful intention on the part of Knight, a question which the Referee apparently concluded was left unanswered by the bank's proof.
The Referee held that it was reasonable to believe that appellee had made an honest *1390 mistake in not precisely listing his gross pay. The Referee also found that Mr. Knight had omitted a substantial amount, "virtually one-half of his indebtedness," from the statement. However, the Referee also found that the bank had probably relied as much, if not more, on the bankrupt's "good track record" than on his financial statement in deciding to extend credit. The bank was found to have failed in its burden of proving the fraud and deceit required, and the bankrupt's discharge was upheld.
Bankruptcy Rule 810 provides in pertinent part: "The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of (sic) the credibility of the witnesses." The burden of showing the Referee's findings to be clearly erroneous is a stringent one; to be convinced, the Court must be left with a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1947); Becker v. Seaboard Finance Co., 436 F.2d 778 (CA 9-1970). This means that before the Referee's judgment may be reversed, the Court must find that no testimony exists for the support of his order, or that he has acted arbitrarily and capriciously. Wright v. Lubinko, 515 F.2d 260 (CA 9-1975); In re Dolnick, 374 F.Supp. 84 (N.D. Ill.-1974). A review of the record and applicable jurisprudence convinces this Court that the Referee's decision is not clearly erroneous, and we affirm his order dismissing the complaint of City National Bank of Baton Rouge.
The problem presented in this case is one of proof. Under 11 U.S.C. § 35(a)(2), § 17(a)(2) of the Bankruptcy Act, the plaintiff must show three things in order to bar a discharge: 1) that the defendant made false representations; 2) that those representations were made with the intention of defrauding the plaintiff; 3) and that plaintiff relied upon and was misled by the false representations. Collier on Bankruptcy, vol. 1, § 14.40; Bazemore v. Stehling, 396 F.2d 701 (CA 5-1968); Seaboard Finance Corp. v. Stipelcovich, 176 So.2d 170 (La.App. 1965). However, the statute requires more than what on its face seems to be straightforward proof. The word "false" means more than erroneous or untrue and imports an intention to deceive, and a materially false statement in writing must have been knowingly and intentionally untrue to bar a discharge. Collier on Bankruptcy, vol. 1, § 14.40 and cases cited therein.
What is necessary to prove this type of fraud has been the subject of some disagreement among the courts. On the one hand, it has been held by some courts that the failure to list a substantial indebtedness such as the one in this case is in itself proof of the requisite fraudulent intent. This was illustrated in Beneficial Finance Co. of America v. Lathrop, 207 So.2d 220 (La.App. 1968), where the Court said: "We are convinced that the complete absence of some reasonable effort to disclose at best a semblance of his bad financial condition was caused by defendant's knowledge that with such disclosure his loan definitely would not be approved. We cannot probe the inner processes of defendant's mind in order to determine intent. There is a trite truism that actions speak louder than words." This reasoning is followed in a somewhat altered form in another line of cases, the thrust of which is that once false representation and the creditor's reliance thereon is shown, the burden then shifts to the bankrupt to establish the absence of intent to deceive. Dial Finance Co. v. Duthu, 188 So.2d 151 (La.App.1966); Beneficial Finance v. Gardache, 164 So.2d 132 (La.App. 1964); see also In re Perlmutter, 256 F. 862 (D.C.N.J.-1919). Early federal cases subscribed to the theory that if the bankrupt could remember to schedule a debt on his bankruptcy petition, but omitted it on his loan application, such omission must have been deliberate. In In re Augspurger, 181 F. 174 (S.D.Ohio-1909), it was said: "If those claims were so far valid as to be scheduled by [defendant] under oath as valid debts and to share in the distribution of his estate, and they did so share without protest from him, they were so far bona *1391 fide that they should have been listed as obligations in any statement made by him as to his financial condition to obtain credit." In cases such as these the Courts have traditionally had to rely on pure circumstance to produce the proof of intention. The Court in Perlmutter, supra, stated that "a rational being is presumed to intend the natural and probable consequences of his words and conduct, and [defendant] in issuing the statement, is presumed to have intended the effect it produced upon the Title Company . . . the person responsible for the untruth, in the absence of proof showing the contrary, will be presumed to have intended to hide from the lender the firm's true financial condition." 256 F. at 866. This presumption, however, was later relegated to a lesser status. In re Trimble, 55 F.2d 165 (CA 8-1932) cited the Perlmutter case for the proposition that such an omission as was involved there "bears strongly upon the question of fraudulent intent." This would seem to be the basic concept underlying the presently prevailing federal jurisprudence under § 17(a)(2). While such an omission is a matter of substantial evidential value, it is not sufficient to carry the burden of proving actual or positive fraud such as is required by that section. United States v. Syros, 254 F.Supp. 195 (E.D.Mo.-1966). This change in the jurisprudence has been accurately expressed in In re Taylor, 514 F.2d 1370, 1373 (CA 9-1975):
"Courts have consistently held that in order for § 17(a)(2) to bar a discharge, the party alleging fraud must prove actual or positive fraud, not merely fraud implied by law. In re Dolnick, 374 F.Supp. 84, 90 (N.D.Ill.1974); In re Adams, 368 F.Supp. 80 (D.S.D.1973); United States v. Syros, 254 F.Supp. 195, 198 (E.D.Mo.1966); 1A Collier on Bankruptcy § 17.16(3). (Footnote omitted.) This fraud is the type involving moral turpitude or intentional wrong, and thus there can be no mere imputation of bad faith. . . . Although a few cases suggest that the burden of proof changes when a prima facie case of falsity has been presented, the true rule is that while the burden of going forward may change, the burden of proof does not. . . . Even assuming that appellee's statements, the other testimony and exhibits present some evidence of fraudulent intent, nonetheless, we are subject to the `clearly erroneous' requirement of Rule 52(a), F.R.Civ.P. As in other civil matters, a bankruptcy referee's findings of fact are to be upheld unless they are clearly erroneous. (Citations omitted.) The question of intent to deceive is particularly one of fact, and so the bankrupt's credibility is an important factor. (Citations omitted.) Here, the referee's findings must be accorded great weight because he had an opportunity to hear and observe the demeanor of the bankrupt and the other witnesses. (Citations omitted.)"
We accept this as an appropriate disposition in this case, for here there was no dearth of evidence tending to support the Referee's decision. Here, as in the Taylor case, supra, some evidence of fraud was introduced. However, in weighing the facts put forward in a contest over a discharge, the Court must bear in mind the beneficial policy allowing the honest debtor to get a fresh start in life. Consequently, § 17 of the Bankruptcy Act will be construed strictly against creditors' objections and liberally in favor of the bankrupt. In re Dolnick, 374 F.Supp. 84 (N.D.Ill.1974).
For the assigned reasons, the order of the Referee in Bankruptcy dismissing the objection of City National Bank of Baton Rouge to the discharge of Carl Knight and Linda Knight will be affirmed, and judgment will be entered accordingly.