In the Matter of Grant L. NELSON, Bankrupt.

CALIFORNIA STATE EMPLOYEES' CREDIT UNION NO. 6, a California Corporation, Plaintiff-Appellee,

v.

Grant L. NELSON, Defendant-Appellant.

No. 76–2677.

United States Court of Appeals, Ninth Circuit.

Oct. 3, 1977.

Forrest M. Greenberg, Stockton, Cal., argued for defendant-appellant.

Michael J. Barkett, Barkett & Badway, Stockton, Cal., argued for plaintiff-appellee.

Before BARNES and TRASK, Circuit Judges, and BURNS,* District Judge.

BARNES, Senior Circuit Judge:

Grant L. Nelson, appellant, filed a voluntary petition for bankruptcy on April 30, 1974. He listed debts of $40,563.00 and assets of $23,700.00, which were claimed to

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

be exempt. He was adjudicated bankrupt on May 16, 1974. He had been borrowing money from appellee, California State Employees' Credit Union No. 6, over a period of some three years, starting in March, 1971.[1] He listed a $5,000.00 debt to appel-

1. These applications for loans all relating to Account No. 9223 were as follows:

| Note # | Credit Applications for Loan, Note dated | Ex. # |
|---|---|---|
| 3477 | 3/23/71 for $2,500, payments to begin 5/1/71 | 4 |
| 4243 | 7/8/71 for $4,141.15, payments to begin 8/1/71 | 5 |
| 6027 | 3/15/72 for $2,334.79, payments to begin 4/1/72 | 6 |
| 7385 | 8/10/72 for $2,363.90, payments to begin 9/1/72 | 7 |
| 8383 | 12/13/72 for $2,619, payments to begin 1/1/73 | 8* |
| 9841 | 6/5/73 for $2,813.16, payments to begin 7/1/73 | 9 |
| 137 | 6/26/73 for $700, payments to begin 7/1/73 | 10 |
| 1292 | 11/30/73 for $5,334.64, payments to begin 1/1/74 | 1 & 2 |

* Erroneously referred to in the record (Tr. p. 43) as dated 12–13–73.

In appellant's first Credit Application (Ex. 4) dated March 16, 1971, appellant was asked to list "all (his) outstanding debts." He did so, as follows:

LIST ALL OUTSTANDING DEBTS BELOW:

| NAME OF CREDITOR | ADDRESS | NATURE OF PURCHASE | ORIGINAL AMOUNT | PRESENT BALANCE | PAYMENTS |
|---|---|---|---|---|---|
| * G.M.A.C. | Salt Lake City | Auto | 4600.00 | 1500.00 | 120.69 |
| * H.F.C. (Gac) | Soda | (moving expenses) | 1300.00 | 450.00 | 54.00 |
| * G.A.C. | Troup | Furn | 650.00 | 380.00 | 28.00 |
| * Sears | Soda | 1) New Tire 2) misc. tire * | 200.00 872.00 | 200.00 850.00 | 20.00 54.00 |
| B of A card | Salt Lake City | misc. | 900.00 | 350.00 | 21.00 |
| Dr. Frigard | | back | 125.00 | 125.00 | 10.00 |

No other Debts

No consideration has passed or will pass from the borrower to the endorsers for their endorsement. The information on this application is given for the purpose of obtaining a loan and is true to the best of my knowledge and belief.

_____
SIGNATURE OF APPLICANT

The first six lines of the above were in the handwriting of appellee's secretary. At her request, and in his own printing, appellant had placed the words "No Other Debts" over his signature. His wife Caraleen was co-signer.

On his second application, appellee's secretary listed his debts when he borrowed from Credit Union No. 6, to buy a Datsun automobile. He again listed his debts and wrote "No Other Debts" opposite, and above, his signature (Ex. 5). No co-signer.

On his third application, appellant listed his debts with the Credit Union's secretary, and thereafter wrote "No Debts" above his signature (Ex. 6). No co-signer.

On his fourth credit application (Ex. 7), appellant listed two debts: "H.F.C. $1,400 present balance, Sears $350 present balance"; and again wrote, over his signature "No Other Debts."

On his fifth credit application, appellant listed only his debts as $1,300 to H.F.C. and $300 to Sears (Ex. 8).

On appellant's sixth credit application, he again listed under "Debts and Credit References," only his debts to H.F.C. (as $1,500) and Sears (as $600), and he printed over his signature "No Other Debts." (Ex. 9).

On appellant's seventh credit application, he sought $700 for the purpose of "medical bills," but purchased a Ford Pinto (Ex. 10). No debts were listed under "Debts and Credit References."

On appellant's eighth credit application to appellee, he listed under "Debts and Credit References" only his debt to Sears ($400.00), and above his signature, he partially printed, and partially wrote "No Other Debts." His wife was co-maker (Exs. 1 and 2).

Appellant explained:

Q. What about the statements of "No Other Debts"? Can you tell us about that?

A. Well, they asked me to put in no debts. I am not sure I understand what the meaning of "List all outstanding debts below" means. I did what was asked of me.

lee as an "unsecured debt without priority," in his bankruptcy schedule.

To the statement of facts in Note 1, we should add that the bankruptcy judge found the debt non-dischargeable under Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C.A. § 35(a)(2); and judgment was rendered on the promissory note held by appellee in the sum of $5,003.11, and costs of $70.00 (C.T. 70–72), plus interest against appellant.

Appellant then appealed to the district court. The district judge ordered the matter remanded to the bankruptcy judge for further proceedings relating to appellee's reliance as that aspect might be affected by the currency of information contained in a credit report received by appellee in light of the "No Other Debts" statement. The bankruptcy judge, after hearing testimony found and held as follows:

"FINDING

On November 27, 1973, plaintiff obtained information from the Credit Bureau of Stockton concerning defendant. This information revealed that defendant was

Q. They just said write "No other debts" here?
A. (Affirmative nod)
Q. And you did?
A. That's right.
Q. And you did that knowing you owed seven or eight or ten other debts on this last loan?
A. Yeah, but they also—there is some statement on there that says "We reserve the right to make a complete credit investigation." In addition to telling them I knew—I had some that I couldn't remember. I assumed their normal procedure would be if they're going to make an investigation they would have found them if I couldn't remember them, if it were of some concern to them, I can't be responsible for their financial processes, I guess. If they wanted this stuff I would have made it available.

R.T. Vol. I, p. 62, line 22 to p. 63, line 12, inclusive.

During this three-year period preceding bankruptcy, appellant had various credit balances with appellee Credit Union. He also apparently sometimes paid off the balance of a previously existing loan with the proceeds from the new larger loan.

On November 27, 1973, when appellant signed the application for the last loan from the appellee, as well as his note (Exs. 1 and 2)—which is the note herein sued upon—appellant owed the following sum of money, which were *not* listed on his November 27, 1973 loan application, but were listed as creditors in his bankruptcy petition four months later:

| | | | | |
|---|---|---|---|---|
| Schedule A–3 | Item 2 | Katten-Marengo Govt. Emp. | $ 306.28 * | |
| Schedule A–3 | Item 3 | Fin. Corp. | 2,405.55 * | |
| Schedule A–3 | Item 4 | Macy's | 290.24 * | |
| Schedule A–3 | Item 7 | Sears) | 321.47) Listed on | |
| | | ) | ) last appl. | |
| Schedule A–2 | Item 2 | Sears) | 241.37) as $400.00 | |
| Schedule A–2 | Item 9 | Weinstock | 117.88 Listed on 7/2/71 application | |
| Schedule A–2 | Item 10 | Univ. of Utah (Student loan) | 1,502.91 * | |
| Schedule A–3 | Item 11 | First Security Bank | 353.23 * | |
| Schedule A–3 | Item 12 | Bank of Calif. (Loan) | 664.00 Listed on 7/2/71 application | |
| Schedule A–3 | Item 13 | Bank of Calif. (Master Charge) | 393.66 | |
| Schedule A–3 | Item 14 | Beehive State Emp. Cr. Union | 276.94 * | |
| Schedule A–2 | Item 3 | Associates | 481.59 * | |

(The debts owed by appellant and never disclosed on *any* application made by him to the Credit Union are marked by asterisks above. Several had existed for one, two or three years prior to bankruptcy.) (R.T. p. 46–54, C.T. 6 and 7).

indebted to a finance company in the sum of $1,705.00 in January, 1973, but did not make evident the falsity of defendant's statement in his loan application that he had no debts on November 27, 1973 other than those therein disclosed. Nor was this information such that plaintiff should be charged with knowledge of the falsity, or of any need for a more extensive credit investigation of defendant.

## CONCLUSION

The judgment and order made and entered herein on March 25, 1975, should not be amended, vacated, or modified, but should be re-affirmed.

IT IS SO ORDERED."

Appellant again appealed to the district judge. After a hearing and briefing, the district court affirmed the judgment and order of the bankruptcy judge. (C.T. 154).

An appeal was then filed with this Court. We have jurisdiction (11 U.S.C.A. § 47(a)).

The nature of appellant's defense to the "Application to Determine Dischargeability of a Debt, etc.," appears in his own words in the record before us:

"Q. Mr. Nelson, you are aware, sir, that you failed to report nearly $7,000 in debts to the credit union at the time you made the credit application of November 27, 1973?

A. Failed to report I think is a little bit strong; over a period of time they had all that information. At that specific time I may not have told them but they had information which indicated that I did have obligations. They had lists of those obligations. At the time I offered to get a list as to my current obligations and they told me it was not necessary, that I was okay for it.

Q. Then it is your testimony then that you were definitely aware of these other obligations at the time that you made this credit application?

A. Yes, I was aware of them." (R.T. p. 56).

Teran Grunberg testified relative to the appellant's signature to his application as follows:

"Q. Did Mr. Nelson report any debts to you in answer to your question?

A. Just Sears.

Q. Sears and what amount did he report?

A. A balance of $400 in monthly payment of $30.

Q. And did you ask him if there were any other debts?

A. Yes, I did.

Q. And what was his answer to you?

A. No.

Q. He gave that answer orally?

A. He gave it orally and wrote it on the application.

Q. What procedure did you use to have him make that entry in his own handwriting?

A. I turned the application around and said, "Would you write 'No other debts'".

Q. And did Mr. Nelson do or say anything to you to indicate that he might not understand what it was he was signing?

A. No, sir.

Q. And do you recall any of the conversation about that?

A. Yes, I do.

Q. Very briefly would you explain to the Court what that conversation was?

A. He had owned a Datsun 240Z which he has sold and he was buying it back because the car had been overhauled and fixed by the doctor that he had sold it to and it was getting good gas mileage and he thought it would now be a good car to have back.

Q. So you remember the specific transaction as opposed to just testifying in general how you take applications, is that correct?

A. Yes, sir.

Q. Are you acquainted with Mr. Nelson other than at the credit union?

A. Yes, I am." (R.T. p. 9 & 10).

Appellant raises three issues on this appeal:

(1) Was the finding by both judges of reliance by the Credit Union clearly erroneous?

(2) Was the finding by both judges of appellant's intent to deceive clearly erroneous?

(3) Did the bankruptcy judge apply the proper measure of damages?

The conversation which took place between appellant and appellee's clerk Grunberg when appellant listed one debt on his application dated November 27, 1973 is in serious dispute. The bankruptcy judge believed witness Grunberg and not appellant, and so stated. (R.T. I, p. 82, lines 8–13; R.T. II, p. 48, lines 16–24). From the testimony of Grunberg, Garness and McClelland (the one credit committee member who recollected granting approval of the loan), and from the testimony and explanations of the appellant himself, there was substantial evidence to support the three findings of the two judges that the Credit Union's reliance on appellant's written representation was not clearly erroneous. (*See* R.T. I, 67–69).

The leading case in this Circuit, interpreting § 17(a) of the Bankruptcy Act is *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975).[2] At page 1373, this Court stated that the burden is on the party challenging the discharge to prove actual or positive fraud. There are five basic elements to be proven by the objecting party in order to obtain an adjudication of non-dischargeability:

".  .  . (1) The debtor made the representations; (2) that at the time he knew they were false; (3) that he made them

with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967), quoted with approval in *In re Taylor, supra*, 514 F.2d at 1373.

Here, the evidence shows, and the Court found, that the debtor *made* the representations he had no other debts but "Sears" on November 27, 1973, excluding minor current bills, such as utilities, etc; that *he knew this was false* (R.T. 56, lines 14–17; C.T. p. 67, Finding 7; C.T. p. 68, Finding 9); that he owed at least $5,000.00 to creditors other than Sears (C.T. p. 67, Finding 8); that the creditor *relied* on such representations (C.T. p. 68, Findings 10, 12, and 13); and that the defendant's false statement was *made with intent to deceive*. (Conclusions of Law, C.T. 69).

Appellant urges that the Court's Finding No. 13 (C.T. 68) is improper because of the use of the phrase: "and he (defendant) is *deemed* to have intended that result," *i. e.*, that his false statement in the application would mislead or deceive the Credit Union. We cannot agree.

█ First, Finding of Fact No. 13 does not stand for a legal presumption but rather for a factual one. It merely asserts the proposition that because it can be shown that the defendant knew (or should have known) that his failure to disclose delinquent debts would make the financial state-

---

**2.** Appellant has referred to two "pre-*Taylor*" dischargeability cases, neither one of which is applicable here on its facts, because each decision supports the district court's approval of a bankruptcy judge's (or referee's) findings and conclusion of law, when not clearly erroneous.

In *In re Dolnick*, 374 F.Supp. 84 (1974), unlike the instant case, the referee *denied* the dischargeability, and the district court felt required to follow that denial, when there was evidence to support that conclusion.

In *In re Knight*, 421 F.Supp. 1387 (M.D.La. 1976), the District Court of Louisiana holds the burden of showing the bankruptcy referee's findings to be clearly erroneous is a stringent one, and the district court must be left with a definite and firm conviction that a mistake has

been committed. There the district court followed the referee's conclusion that Knight has made an honest mistake—when he overstated his monthly take home pay, and had not listed a non-written $10,000 debt. The district judge commented that "the evidence adduced casts serious doubt on Knight's explanation," but that "As in other civil matters, *a bankruptcy referee's findings of fact are to be upheld unless they are clearly erroneous.* The question of intent to deceive is particularly one of fact, and so the bankrupt's credibility is an important factor", quoting from *In re Taylor, supra*.

Following that rule here, the district judge was left with no definite and firm conviction that the bankruptcy judge had committed a mistake, nor have we.

ment materially false and that the false statement would mislead and deceive the plaintiff into making a loan, the defendant will be found to have intended that result (the deception). That proposition is logical and comports with the current law on the subject. *See* 1A Collier on Bankruptcy ¶ 17.16 at 1631–1642; *Abbott v. Regents of University of California,* 516 F.2d 830, 831 (9th Cir. 1975) wherein it is stated:

"The evidence supports the bankruptcy judge's determination that Abbott failed to disclose information with an intent to deceive the University. A failure to disclose prior loans on a loan application constitutes a materially false representation."

Second, in the *Taylor* case, the appellee-debtor failed to list certain outstanding debts on a loan application form. There was a significant factual dispute as to what the appellee had been told to include on the form by the appellant-creditor's agent. After an evidentiary hearing, the referee found that the evidence did not sustain the appellant's burden of proving that the appellee intended to deceive the appellant. It was specifically noted that the appellant's representative did not deny telling the appellee that he did not have to list certain of the debts. This Court held that:

"Accordingly we hold the burden of proof was on appellant to show that appellee intentionally and purposefully attempted to deceive appellant in obtaining the loan. Although a few cases suggest that the burden of proof changes when a *prima facie* case of falsity has been presented, the true rule is that while the burden of going forward may change, the burden of proof does not. Here, the appellee took the witness stand and obviously persuaded the referee of a lack of intent."

*Taylor, supra,* 514 F.2d at 1373. (Duniway, J., dissenting). It is clear that *Taylor* does not stand for the proposition that given a set of similar facts, a referee could not find the requisite intent to deceive if he did not believe the debtor's explanation for his failure to include his prior debts on the loan form. Rather, the majority opinion in *Taylor* found the failure to list prior debts to be

but one factor to be used in determining intent. As the Court noted: "The question of intent to deceive is particularly one of fact, and so the bankrupt's credibility is an important factor. . . . Here, the referee's findings must be accorded great weight because he had an opportunity to hear and observe the demeanor of the bankrupt and the other witnesses. [Footnotes and citations omitted]." *Id.* at 1373–1374. And so must we in the circumstances of this case.

■ Here, the referee reached the opposite conclusion than the one reached by the referee in *Taylor* on the issue of the evidence of intent. We again point out and emphasize that the bankruptcy judge specifically found that: (1) the appellant knew and was aware of his debts (Finding of Fact No. 9), (2) the appellant did not give the Credit Union any cause or reason to suspect that he was being untruthful or that his application was not complete and correct (Finding of Fact No. 10), (3) the appellant knew or should have known that the loan form was false and would deceive the creditor (Finding of Fact No. 13). Given the above factual findings, the further conclusion that the debtor had an intent to deceive was practically inevitable. In addition, in the present case unlike the debtor in *Taylor* who was merely silent on the existence of prior debts, the appellant here affirmatively stated on the loan form that there was "No other debts." That false and deliberate statement on the loan application was sufficient for the referee to base his finding of an intent to deceive when the referee did not find credible the debtor's explanation for the misrepresentation.

The case of *Wright v. Lubinko,* 515 F.2d 260 (9th Cir. 1975), also cited by appellant, is not helpful to the appellant's cause as the factual finding there was that the debtor had no fraudulent intent although he did make certain false representations.

■ Third, in reviewing the bankruptcy judge's finding of an intent to deceive, this Court is aware that it is a finding of fact relating to a subjective state of mind, one wherein the bankrupt's credibility is an important factor. *Taylor, supra,* 514 F.2d at

1373. Moreover, this Court must employ the "clearly erroneous" standard of review. *Abbott, supra,* 516 F.2d at 831; *Union Bank v. Blum,* 460 F.2d 197, 200 (9th Cir. 1972). Given the facts herein and the "great weight" accorded to the referee's determinations of credibility, *Taylor, supra,* 514 F.2d at 1373–1374, we cannot say that the referee's finding of an intent to deceive was "clearly erroneous" much less erroneous at all. Neither could the district court.

Thus, we find no merit in appellant's first and second points of "no reliance," and "no intent to deceive."

█ There remains the claim that there was an improper measure of damages. The Credit Union argues, correctly, that the issue was not raised in a timely manner below. Indeed, the amount owed (the amount subject to the Credit Union's claim of nondischargeability) was never disputed by Nelson in either the bankruptcy court or the district court. Therefore, the issue need not, and will not, be considered by this Court. "This theory is not properly before us and it also lacks merit." *Moore v. Great Western Savings and Loan Ass'n,* 513 F.2d 688, 691 (1975). Error not raised below will ordinarily not be considered on appeal. *Michael Regan Co., Inc. v. Lindell,* 527 F.2d 653 at 659 (1975); *Rothman v. Hosp. Service of Sou. Cal.,* 510 F.2d 956 at 960 (1975); Moore's Federal Practice, Vol. 5A, ¶ 46.02, pp. 1902–1906.

The judgment of the district court is AFFIRMED.