**In re Deborah Anne SHIPLEY, Bankrupt.**

**STATE EMPLOYEES CREDIT UNION OF MD., INC., Plaintiff,**

v.

**Deborah Anne SHIPLEY, Defendant.**

**Bankruptcy No. 79–00588–K.**

United States Bankruptcy Court,
D. Maryland.

Oct. 3, 1979.

John F. Brown, Baltimore, Md., for State Employees Credit Union of Maryland, Inc.

Lance I. Yateman, Mezger & Mezger, Glen Burnie, Md., for Deborah Anne Shipley.

## MEMORANDUM

HARVEY M. LEBOWITZ, Bankruptcy Judge.

This is an action for a judgment on a debt and to declare the debt to be nondischargeable under § 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2).[1]

On April 10, 1979, the Defendant-Bankrupt, Deborah Anne Shipley, filed in this Court a voluntary petition under the Bankruptcy Act. On May 3, 1979, the Plaintiff, State Employees Credit Union of Maryland, Inc., filed a complaint seeking a judgment decreeing that a debt due from the Bankrupt to the Plaintiff is nondischargeable

---

1. Section 11 U.S.C. § 35(a) provides in pertinent part:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . . "

under § 17 of the Bankruptcy Act and a judgment for a sum equal to the unpaid balance of the account as of April 10, 1979, together with interest and attorney's fees and costs as provided in the Agreements between the Plaintiff and the Bankrupt. Trial before the Court was held on June 13, 1979, at which time witnesses were called, testimony taken and evidence introduced. Counsel for the parties have since provided the Court with Memoranda of Law. The Court's findings of fact and conclusions of law are intended to be contained herein though not expressly so designated. Bankruptcy Rule 752.

There appears to be no material dispute between the parties regarding most of the facts and circumstances surrounding the transactions which give rise to this proceeding. Plaintiff is a duly chartered credit union whose members are employees of the State of Maryland. Bankrupt is a graduate social worker and is employed by Spring Grove Hospital Center. She is educated, articulate and intelligent. On August 16, 1978, she applied for and obtained a loan of $3,500.00 from the Plaintiff (the "first loan"). On March 29, 1979, she applied for and obtained a second loan of $3,500.00 (the "second loan") which had the end result of repayment of the first loan and providing the Bankrupt with $728.68 in proceeds. In January, 1979, prior to the Bankrupt's applying for and obtaining the second loan from the Plaintiff, she consulted her attorney with respect to filing a voluntary petition in bankruptcy.

At the trial Plaintiff introduced into evidence the loan application of March 29, 1979, (Plaintiff's Exhibit No. 1) and Bankrupt introduced into evidence the loan application of August 16, 1978 (Defendant's Exhibit No. 1). On both applications there is a section which begins "List below all installment debts (including credit cards) for which the applicant is in any way responsible". Below this heading on each application there are spaces provided for listing "mortgage or rent"; "automobile financing"; "other"; "other" and "other", together with additional information with respect to each item to be listed, including

the current balance and the amount past due on each item listed. On the Application of August 16, 1978, only four debts were listed. On the Application of March 29, 1979, only two debts were listed, one of which had the notation that it was the responsibility of the Bankrupt's father.

Both Applications contained the questions: "Are there any unsatisfied judgments against you" which was marked "no" in each instance.

At the end of the Applications there is the following statement:

"PLEASE READ BEFORE SIGNING: The undersigned having applied to the State Credit Union for a loan, for the purpose of showing ability to repay same and inducing such Credit Union to make said loan, do hereby certify, represent and warrant that the above is a full, complete and correct statement of all debts and liabilities as of this date. All information set forth in this application is declared to be a true representation of the facts made for the purpose of obtaining the credit request and any willful misrepresentation on this application could result in actions of Article 27, Section 148 of the Annotated Code of Maryland . . . ."

The Bankrupt testified that on both occasions she was greeted by a receptionist, who, upon being informed of Bankrupt's desire to make a loan, obtained and gave to Bankrupt a computer card containing employment related information and a number. Bankrupt was then directed to a loan interviewer and on both occasions it was the loan interviewer, and not the Bankrupt, who filled in the information on the forms based on the oral responses given by the Bankrupt to the specific questions asked by the loan interviewer. Bankrupt testified that with respect to the Application of August 16, 1978, she was asked by the loan interviewer to supply only "credit references" and that with respect to the Application of March 29, 1979, she was merely asked to describe which bills she was paying at that time and nothing more. Neither loan interviewer was called as a witness by the Plaintiff.

The Bankrupt has admitted that at the time of making the first loan, August 16, 1978, there were a large number of other debts which were not listed on the Application, many of which were overdue.

The Bankrupt has further admitted that at the time of the second loan, March 29, 1979, there were a large number of other debts which were not listed on the Application, many of which were overdue and a judgment had been obtained against her by Citicorp Financial, Inc. on March 2, 1979, which is shown in answer to Item 12 of the Statement of Affairs filed by Bankrupt in these proceedings.

Although the signature of the Bankrupt appears immediately below the above-quoted certification and warranty, Bankrupt testified that she neglected to read those provisions on both occasions even though the admonition "Please Read Before Signing" appears prominently in large type and is clearly discernible.

The Bankrupt further testified that she must have misunderstood the question of the loan interviewer when she answered in the negative regarding the existence of any judgments as of March 29, 1979.

Bankrupt also admitted that she consulted with her attorney in the beginning of January, 1979, regarding bankruptcy proceedings. The second loan was obtained March 29, 1979. The Bankruptcy Petition was notarized on April 6, 1979 and filed on April 10, 1979, less than two (2) weeks after obtaining the second loan.

The Bankrupt stated the Plaintiff was not relying on her Application, or the status of her credit or the amount of her debts, but instead was relying on her employment with the State and deductions made from her salary to repay the loan. Plaintiff called, as a witness, Mary Maley, the loan officer who approved the loan of March 29, 1979. She testified that her decision to grant the loan was based on Bankrupt's length of employment, wages, and her ability to meet existing debts and the information contained in the Application was significant in making any determination as to whether the Bankrupt would be able to meet her obligations. She also stated that if all the debts were known the loan would not have been granted.

In order for the Plaintiff to obtain an adjudication of nondischargeability of its debt under § 17 a (2) of the Bankruptcy Act (11 U.S.C. § 35(a)(2)), it has the burden of proving the following elements:

1. A written statement.

2. Which was materially false as to financial condition.

3. That at the time he knew that they were false and he made them with the intention and purpose of deceiving his creditor.

4. That by the use of such statement property was obtained or credit extended.

5. That the creditor relied upon such representations and sustained the alleged loss and damage as a proximate result of the misrepresentations. *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975); *Wolfe v. Tri-State Insurance Company*, 407 F.2d 16 (10th Cir. 1969); 1A Collier on Bankruptcy, ¶ 17.-16.

The Court concludes that the Plaintiff has satisfied its burden of proof with respect to each element required to find the debt to be nondischargeable.

1. *A written statement.* There is no dispute that the loan applications signed by the Bankrupt constitute written statements as of the dates they were signed.

2. *Materially false as to financial condition.* To meet this criteria the financial statement must contain a materially false statement as to financial condition through the use of false pretenses or a materially false statement. Both false pretenses and false representations are referred to in § 17 a (2) (11 U.S.C. § 35(a)(2)) of the Act. False representations may appropriately mean express misrepresentations. False pretenses are implied misrepresentations or conduct intended to create or foster a false impression. 1 A Collier ¶ 17.16 at 1640.1. The only kind of fraud which will prevent a discharge under § 17 a

(2) is that committed by fraudulent misrepresentation of fact by such conduct and artifice which, having a fraudulent purpose, will throw one off his guard and cause him to omit inquiry or examination which he would otherwise make. *Davison-Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir. 1970). Reckless representations are sufficient to except the debt from discharge. *Katzenstein v. Reed Murdock & Co.,* 41 Tex.Civ. App. 106, 91 S.W. 360 (1905). Representations made in reckless disregard for truth is tantamount to willful misrepresentation and the creditor relied upon this and was misled by the false pretense or misrepresentation. *Friendly Finance Co. v. Stover,* 109 Ga.App. 21, 134 S.E.2d 837 (1964). See *Matter of Nelson,* 561 F.2d 1342 (9th Cir. 1977).

In the instant case the Bankrupt made express misrepresentations of fact and by her conduct showed a willful disregard for the truth and by these actions caused the Plaintiff to omit further inquiry or examination it would otherwise have made. The question as to existing judgments contained in the Application of March 29, 1979, was answered in the negative notwithstanding the fact that a judgment against the Bankrupt, of which she was aware, did in fact exist. She executed both Applications immediately below the certification and warranty that required complete disclosure and contained the prefatory admonition in capital letters "PLEASE READ BEFORE SIGNING". She is an educated and intelligent person and even if she had not read the certification, she was familiar with the Application, having obtained loans on two separate occasions and Bankrupt knew or should have known that she was not making a full disclosure. Where, as here, the Application was signed and certified as being truthful, such a representation made with the reckless indifference to the truth as shown from the facts in this case, imputes knowledge to the Bankrupt of the fact that the Applications were materially false. The Court, therefore, concludes that the applications were materially false as to the financial condition of the Bankrupt which existed at the time of the making of the loans.

3. *That at the time Bankrupt knew that they were false and Bankrupt made them with the intention and purpose of deceiving his creditor.* There is no dispute that at the time Bankrupt obtained the loans she failed to disclose many other debts, some of which were past due. The omission of substantial liabilities from a statement as to financial condition constitutes a materially false statement. *In re Graham,* 22 F.Supp. 233 (W.D.Ky.1938). Bankrupt testified that she merely responded to questions propounded by the loan interviewer. The credibility of the Bankrupt's testimony is for the Court to determine. Her purpose in answering the questions as she did is likewise for the Court to determine from the evidence adduced at the trial. The Court believes that the Bankrupt knew that merely responding to the questions asked by the loan interviewer and not to all the questions contained in the Applications would mislead the Plaintiff, and it was done with the express intention to deceive. The failure of the Bankrupt to disclose all of her debts and those which were delinquent of which she had full knowledge leads the Court to the conclusion that the Bankrupt intended to deceive the Plaintiff for the purpose of obtaining the loans. Had she made a full disclosure the loan would not have been granted.

But even if Bankrupt's omissions can be seen as unintentional, they can certainly be described as reckless representations. *Katzenstein v. Reed Murdock & Co.* Further, the conduct of the Bankrupt was intended to foster or create a false impression as to her financial condition. 1 A Collier on Bankruptcy, ¶ 17.16 at 1631–1642. The Court, therefore, concludes that the statements of the Bankrupt were false and made with the intention to deceive Plaintiff.

4. *That by the use of such statement property was obtained or credit extended.* There is no dispute, and it was in fact stipulated, that credit was obtained by Bankrupt from Plaintiff on March 29, 1979, and that there is an outstanding balance on

said loan in excess of $3,500. The Court concludes that property was obtained and credit was extended on March 29, 1979, as a result of the Bankrupt's statement.

 5. *That the creditor relied upon such representations and sustained the alleged loss and damage as a proximate result of the misrepresentation.* Ms. Maley testified that Plaintiff relied on three separate elements in extending credit; namely length of service, salary and ability to meet existing debts. Ms. Maley testified that the loan of March 29, 1979 would not have been granted if a full disclosure of her debts had been given by the Bankrupt. The false statement must be a moving or contributing cause for the extension of credit. *In re Graham.* The Court concludes that the false statement given by the Bankrupt was, at the very least, a contributing cause for the extension of credit and the creditor relied upon the statement and sustained the alleged loss and damage as a proximate result of the misrepresentations.

 It should be further noted that Bankrupt had consulted her attorney in January, 1979, obtained the second loan on March 29, 1979, and signed the Petition in Bankruptcy on April 6, 1979, which was filed with the Court on April 10, 1979. Under these facts, it can reasonably be concluded that, when the Bankrupt applied for and obtained her loan on March 29, 1979, she had no intention of repaying the loan, it being her intention to obtain relief therefrom in bankruptcy. Maryland has adopted the view that fraud may be predicated on promises made with the intention not to perform them. The basis of the fraud in such cases is not the failure to perform the agreement but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the promisor by such false promises. See *Appel v. Hupfield*, 198 Md. 374, 84 A.2d 94 (1951). The Court doubts that at the time the Bankrupt obtained the loan on March 29, 1979, she had any intention of performing, but would, instead, attempt to have it discharged in the bankruptcy proceedings.

In the *Matter of Nelson*, the facts and issues were quite similar to the instant case. In that case there was a dispute between the Plaintiff and Defendant as to how the loan application was taken. There, as here, the debtor was a well-educated person who had filed more than one application with the same loan company and knew how the loan application was taken. Reliance on the loan application was established by the sole testimony of the loan officer. The Court stated that the Defendant knew or should have known that the loan application was false and would deceive creditors and that the debtor was aware of his debts and did not give the creditor cause or reason to suspect that he was being untruthful or that his application was not complete or correct. The *Nelson* court further found that the debtor knew or should have known that his failure to disclose the delinquent debts would make the financial statement materially false and that the false statement would mislead and deceive the credit union into making a loan. Intent is not a legal presumption but is a factual presumption for the Judge to make. The Judge has the opportunity to hear and observe the demeanor of the bankrupt and the other witnesses.

For the reasons stated above, the Court concludes that the debt of the Bankrupt to the Plaintiff resulting from the loan made to the Bankrupt on March 29, 1979, is non-dischargeable.

Plaintiff also seeks a judgment for the amount of the debt. At the trial Plaintiff introduced a statement of account (Plaintiff's Exhibit # 3) showing the amount due as of June 14, 1979 to be $3,507.02, which is undisputed. Judgment will therefore be awarded for the aforesaid amount together with interest, at the legal rate allowed by Maryland law, from the date hereof, plus costs.