In the Matter of CLARK PIPE AND SUPPLY COMPANY, INC., Debtor.

Claude R. SMITH, as Trustee for the Debtor, Clark Pipe and Supply Company, Inc., Plaintiff,

v.

ASSOCIATES COMMERCIAL CORPORATION.

Civ. A. No. 87–3445.

United States District Court, E.D. Louisiana.

May 23, 1988.

Liskow & Lewis, Philip K. Jones Jr., New Orleans, La., for Claude R. Smith, trustee.

Edward M. Heller, Bernard H. Bernis, Jan M. Hayden, New Orleans, La., for debtor.

Monroe & Lemann, Richard W. Bussoff, New Orleans, La., for Associates Commercial Corp.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

On May 7, 1982, Clark Pipe and Supply Company, Inc. ("Clark Pipe"), a wholesale pipe company supplying the offshore construction industry, filed for reorganization under Chapter 11 of the Bankruptcy Code. Immediately after the filing of the order for relief, the major vendors of Clark Pipe (i.e., Nichimen Company, Inc. (formerly Japan Cotton Company), Mitsubishi International Corporation, Okaya (U.S.A.), Inc., Interpipe, Inc., Berg Steel Pipe Corporation and The Walworth Company,) filed motions to lift the automatic stay, and each asserted a security interest over pipe or valves which they had sold to Clark Pipe. Adversarial proceedings were conducted with regard to each vendor, and the Bankruptcy Court recognized the existence of a vendor's privilege in favor of Nichimen, Mitsubishi, Berg, Walworth, Interpipe, and Okaya. These judgments were affirmed on appeal to this Court and to the Fifth Circuit. The vendor's privilege was found to be superior to the inventory mortgage in favor of Associates Commercial Corporation ("Associates").

On August 31, 1982 the bankruptcy proceeding was converted to one under Chapter 7 by the Bankruptcy Code, and Claude R. Smith was appointed Trustee (the "Trustee"). On April 29, 1983 this action was commenced by Nichimen on behalf of the Creditors' Committee of Clark Pipe. On July 13, 1983 the complaint was amended, and the Trustee was substituted as plaintiff in this action. Thereafter, this action was stayed pending final resolution of the vendor's privilege cases to which reference is made above. On August 28, 1986, trial of this present matter was held before the Honorable Thomas M. Brahaney, III. Findings of fact and conclusions of law were issued by the Bankruptcy Court on April 10, 1987, and entry of an amended judgment occurred on June 9, 1987. This matter now comes before the Court on Associates' appeal of that decision.

This matter involves two claims of the Trustee. In the first claim, the Trustee seeks to have the claims of Associates against the Debtor subordinated to other claims of creditors. This action is pursuant

to Section 510(c) of the Bankruptcy Code, 11 U.S.C. § 510(c). In the second claim, the Trustee seeks to avoid certain preferential transfers of Clark Pipe to Associates. This action is pursuant to Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b).

The standard of review that this Court must engage in is provided in Rule 8013 of the Rules of Bankruptcy Procedure:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The burden of establishing a clearly erroneous determination is a stringent one; to be convinced, the court must be left with a definite and firm conviction that a mistake has been committed. Furthermore, the test to be utilized by the district court, and the appellate court, is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings. *Prudential Credit Services v. Hill*, 14 B.R. 249, 250–51 (S.D.Miss.1981). In *In Re Knight*, 421 F.Supp. 1387, 1390 (M.D.La.1976), *aff'd*, 551 F.2d 862 (5th Cir.1977), the court held that "before the Referee's judgment may be reversed the Court must find that no testimony exists for the support of his order, or that he has acted arbitrarily and capriciously."

In September of 1980, Associates and Clark Pipe entered into a contractual relationship whereby Associates loaned money secured by an assignment of accounts receivable and a mortgage affecting the inventory of Clark Pipe. Associates agreed to advance funds to Clark Pipe up to eighty-five percent of "eligible receivables" and sixty percent of inventory valued at cost. The initial credit line was $2,250,000, and in February, 1981, the credit line was increased to $2,750,000.

Associates managed the loan by having Clark Pipe deposit all collections from its accounts receivable in an account solely controlled by Associates. As evidence of this, the Accounts Rider to the Loan and Security Agremeent provided that Clark Pipe shall:

Receive, as the sole and exclusive property of (Associates) as Trustee for (Associates) all monies, checks, notes, drafts and other property or properties in the nature of items of payment representing the proceeds of any Account which come into the possession of (Clark Pipe) and immediately transmit all such items of payment and proceeds in the exact form received by (Clark Pipe) to (Associates) at (Associates) principal place of business, or, if directed by lender in writing to an agent or account of lender specified by (Clark Pipe), and (Clark Pipe) shall affix appropriate endorsements or assignments upon all such items of payment and proceeds that the same may be properly deposited by (Associates) to (Associate's) account.

The accounts receivable funds of Clark Pipe would be wired to Associates' Dallas office. Clark Pipe would then request advances for its operating funds. Clark Pipe had no other source of operating funds. Initially, Associates routinely advanced all requested funds to Clark Pipe as long as the maximum limits in the loan agreement were not reached. Fred H. Slice, an employee of Associates, was the loan officer responsible for Clark Pipe. The Bankruptcy Court, in its findings of fact, found that in February, 1982, Mr. Slice thought Clark Pipe was in serious financial trouble and therefore he began to advance only sufficient funds to pay "must" bills. Furthermore, the Bankruptcy Court found that Associates had prevented any payment being made to the vendors of Clark Pipe. In addition, the Bankruptcy Court found that from February through April 1982, Mr. Slice exercised total control over the payment of Clark Pipe's creditors by advancing only sufficient funds to pay minimum operating costs necessary to permit the continued sale of inventory. By controlling the advances which provided the operating funds, the Court found that Associates had assumed effective control of the management of Clark Pipe.

As a result of testimony, documentary evidence and these factual findings, the Bankruptcy Court concluded:

> The Court is of the opinion that each of the necessary elements of the test for subordination have been met. Associates engaged in inequitable conduct by asserting control over Clark Pipe for its benefit. This was to the detriment of Clark Pipe and other creditors. The Court finds equitable subordination to be an appropriate remedy in this case and not inconsistent with the provisions of the Bankruptcy Code.

In its appeal, Associates questions whether the bankrutpcy court employed the correct legal standard for determining whether the claim of Associates should be subordinated and whether the bankruptcy court's legal conclusion that Associates had exercised control over the debtor disregarded the guidelines laid down by the jurisprudence concerning what constitutes control over a bankrupt. The Fifth Circuit has enunciated a three prong test to determine whether and to what extent a claim should be subordinated. For a court to subordinate the claim of a creditor, the following must be present:

> (i) The claimant must have engaged in some type of inequitable conduct.
>
> (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantge on the claimant.
>
> (iii) Equitable subordination of a claim must not be inconsistent with the provisions of the Bankruptcy Code.

*Matter of Missionary Baptist Foundation of America,* 712 F.2d 206, 212 (5th Cir. 1983). Additionally, the Fifth Circuit stated that "the courts have recognized three general categories of conduct sufficient to warrant equitable subordination: 1) fraud, illegality, breach of fiduciary duties; 2) undercapitalization; and 3) claimant's use of the debtor as a mere instrumentality or alter ego." *Id.* at 212.

The Bankruptcy Court found that the type of conduct engaged in by Associates warranted equitable subordination. The control exercised by Associates was effective and inequitable to the creditors of Clark Pipe. When Associates began advancing loans solely to liquidate Clark's assets in February, 1982, they were controlling the disbursal of all operating funds and they knew other creditors would not be paid.

The law has provided for equitable subordination in similar situations. Both parties have cited *In re American Lumber Company,* 5 B.R. 470 (D.Minn.1980) as an example of the type of activity that warrants subordination. In that case, the bank was an unsecured creditor who took security interests in the inventory and accounts receivable. It began liquidation of the debtor by commencing a foreclosure on its security interest. The debtor's employees were all fired and a new skeleton crew was subsequently hired.

The bank instituted a depository system into which all the debtor's collections were deposited and they determined who would be paid. The bank refused to pay general unsecured creditors or sales taxes while seeing to it that accounts receivables were enhanced.

The Bankruptcy Court found that in the present case, the control exercised by Associates was not as apparent as that in *American Lumber,* but nonetheless was sufficient to warrant equitable subordination. This Court agrees with the Bankruptcy Court's Findings of Fact and Conclusions of Law. The factors enumerated by the Fifth Circuti in the *Matter of Missionary Baptist Foundation of America* listed above were all met. The Bankruptcy Court did not err in finding that Associates had engaged in inequitable conduct and thus were to be subjected to equitable subordination.

Accordingly, the decision of the Bankruptcy Court is AFFIRMED.